## TREBILCOCK v. WILSON ET UX.

1. Where a plaintiff in error set up in the court below that he was entitled to have a note held by him and made by the defendant in error, paid in gold or silver coin under the Constitution, upon a proper construction of various clauses of that instrument, and the decision of the court below was against the right thus set up, this court has appellate jurisdiction under the 25th section of the Judiciary Act of 1789, or the 2d section of the amendatory Judiciary Act of 1867, to review the decision. The case of *Roosevelt* v. *Meyer* (1 Wallace, 512) overruled.

2. Where a note is for dollars, payable by its terms, *in specie*, the terms "*in specie*" are merely descriptive of the kind of dollars in which the note is payable, there being more than one kind of dollars current recognized by law; and mean that the designated number of dollars shall be paid in so many gold or silver dollars of the coinage of the United States.

3. The act of February 25th, 1862, in declaring that the notes of the United States shall be lawful money and a legal tender for all debts, only applies to debts which are payable in money generally, and not to obligations payable in commodities or obligations of any other kind.

4. When a contract for money is by its terms made payable in specie or in coin, judgment may be entered thereon for coined dollars. *Bronson* v. *Rhodes* (7 Wallace, 229) affirmed.

ERROR to the Supreme Court of the State of Iowa; the case being thus:

In June, 1861, Wilson gave to Trebilcock his promissory note for nine hundred dollars, due one year after date with ten per cent. interest, *payable in specie;* and, at the same time, to secure its payment, he and his wife executed and delivered to Trebilcock a mortgage, duly recorded, upon certain real property in Iowa.

In February, 1863, Wilson offered to pay the amount due on the note, principal and interest, and for that purpose tendered to Trebilcock such amount in United States notes, declared by the act of Congress of February 25th, 1862,* to be a legal tender for all debts, public and private, with certain exceptions; but Trebilcock refused to receive them, asserting that the note was payable in gold or silver coin of the United States.

---

* 12 Stat. at Large, 345.

In July, 1865, Wilson and wife presented to one of the District Courts of Iowa their petition, reciting the contract to pay " in specie," and setting forth that they had tendered to Trebilcock the full amount of money, principal and interest, due, " said money so offered and tendered being United States legal tender treasury notes, commonly called greenbacks;" setting forth, further, that Trebilcock had refused to accept the same, " because," among other reasons, " the said money was not in kind what the contract demanded or called for; . . . the said defendant claiming that the same was payable only in gold or silver coin." And praying finally that Trebilcock might be required, by decree, to release and discharge the mortgage upon the proper book of record, as required by law upon the payment of a mortgage-debt. The complainants averred that they had kept the money tendered, ready to pay the defendant, and that they brought the same into court for that purpose.

The defendant demurred to the petition, and for causes, among others of demurrer, set down the following:

" 1st. The petition shows upon its face that by the contract the note could only be discharged by payment of the amount due thereon in gold.

" 2d. The petition asks the aid of this court for the reason that the petitioners tendered the amount of the note described in the petition in United States treasury notes. Such tender is not good. There is no law of this State or of the United States making anything but gold and silver a legal tender in discharge of the contract set out in the petition. This contract was entered into on the 25th day of June, 1861. The law of Congress making United States treasury notes a legal tender in payment of debts does not apply to this contract, because it was not enacted until long after this contract was entered into, to wit, on the 25th day of February, 1862. To apply this law to this contract would be to make it a retrospective law, a law impairing the obligation of contracts, in violation of the Constitution of the United States."

The court overruled the demurrer, and in September, 1866, gave its decree, that the mortgage be cancelled, and

that the defendant enter satisfaction of it upon the record; thus holding that the tender in notes was legal and sufficient.

On appeal to the Supreme Court of Iowa, this decree was, in October, 1857, affirmed, and the defendant brought the case here on a writ of error, under the 25th section of the Judiciary Act of 1789.

That section was re-enacted, with some changes in its phraseology, by the 2d section of the act of 1867, amending the Judiciary Act of 1789. As the old section was the ground of argument at the bar and the new one is adverted to in the opinion of the court, both are here presented.

| *Judiciary Act of* 1789.[*] | *Amendatory Judiciary Act of* 1867.[†] |
|---|---|
| "SEC. 25. *And be it further enacted*, That a final judgment or decree in any suit, in the highest court [of law or equity] of a State in which a decision in the suit could be had, | "SEC. 2. *And be it further enacted*, That a final judgment or decree in any suit in the highest court of a State in which a decision in the suit could be had, |
| "Where is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States, and the decision is AGAINST their validity, | "Where is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States, and the decision is AGAINST their validity, |
| "Or where is drawn in question the validity of a statute of or an authority exercised under any State, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of such their validity; | "Or where is drawn in question the validity of a statute of or an authority exercised under any State, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of such their validity; |
| "*Or where is drawn in question the construction of any clause of the Constitution, or of a treaty, or statute of, or commission held* | "*Or where any title, right, privilege, or immunity is claimed under the Constitution, or any treaty or statute of, or commission held, or* |

under the United States, and the.decision is AGAINST the title, right, privilege [or exemption], specially set up or claimed by either party, under such [clause of the said] Constitution, treaty, statute [or], commission, may be re-examined and reversed or affirmed in the Supreme Court of the United States upon a writ of error, .... in the same manner and under the same regulations, and the writ shall have the same effect as if the judgment or decree complained of had been rendered or passed in a [circuit] court, and the proceeding upon the reversal shall also be the same, except that the Supreme Court [instead of remanding the cause for a final decision, as before provided], may at their discretion [if the cause shall have been once remanded before], proceed to a final decision of the same, and award execution [but no other error shall be assigned or regarded as a ground of reversal in any such case as aforesaid than such as appears on the face of the record, and immediately respects the before-mentioned questions of validity or construction of the said Constitution, treaties, statutes, commissions, or authorities in dispute]."

*authority exercised* under the United States, and the decision is AGAINST the title, right, privilege [or immunity], specially set up or claimed by either party under such constitution, treaty, statute, commission [or authority], may be re-examined and reversed or affirmed in the Supreme Court of the United States upon a writ of error, .... in the same manner and under the same regulations, and the writ shall have the same effect as if the judgment or decree complained of had been rendered or passed in a court [of the United States]; and the proceeding upon the reversal shall also be the same, except that the Supreme Court may, at their discretion, proceed to a final decision of the same, and award execution [or remand the same to an inferior court]."

*Mr. G. B. Corkhill, for the defendant in error,* asked to have the case dismissed for want of jurisdiction, relying on *Roose-*

*velt* v. *Meyer*,* as in point.   There Meyer, a mortgagor, tendered in United States notes, authorized by the act of February 25th, 1862 (the sort of notes tendered here), then at a discount of 4 per cent. for gold, to Roosevelt, his mortgagee, the amount due on a mortgage; one created in 1854, like this one, before the passage of the legal tender acts. Roosevelt refused the tender; demanding coin.   The highest court of New York decided that the notes were a good tender; and though it appeared by the order of that court for judgment, that on the hearing of the case, Roosevelt relied on the provision of the Constitution, that " the Congress shall have power to coin money and regulate the value thereof," and of the 5th, 9th, and 10th amendments, which ordain that "no person shall be deprived of property without due process of law;" that "the enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people;" and that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people "—*against* all which, as he contended the decision of the New York court sustaining the tender, had been,—this court dismissed the case for want of jurisdiction.   They say that "as the validity of the act of February 25th, 1862, was drawn in question, and the decision was in *favor* of it, this court could not take cognizance of the case."

But if jurisdiction exists, the unsettled condition of the law of legal tender justifies asking a review of the whole subject; cases of coin contract (if this one falls within that class) as well as others.

*Mr. G. W. McCrary, contra,* relied for an answer to the point of jurisdiction, on *Furman* v. *Nichols*;† and as to the matter of merits, on *Bronson* v. *Rhodes.*‡

Mr. Justice FIELD delivered the opinion of the court.

The principal question presented in this case for our con-

---

\* 1 Wallace, 512.        † 8 Wallace, 44.        ‡ 7 Id. 229.

sideration is, whether a promissory note of an individual, payable by its terms *in specie,* can be satisfied, against the will of the holder, by the tender of notes of the United States declared by the act of Congress of February 25th, 1862, to be a legal tender in payment of debts.

There is, however, a preliminary question of jurisdiction raised, which must be first disposed of. The State court, in holding the tender legal and sufficient, sustained the validity and constitutionality of the act of Congress declaring the notes a legal tender. Its decision was, therefore, in favor of, and not against, the right claimed by the plaintiffs under the act of Congress, and hence it is contended that the appellate jurisdiction of this court does not arise under the 25th section of the Judiciary Act of 1789. Some support is given to this view by the decision of this court in *Roosevelt* v. *Meyer,** where it was held that, as the validity of the legal tender act was drawn in question in that case, and the decision of the State court was in favor of it, and of the right set up by the defendant, this court had no jurisdiction to review the judgment, and a dismissal of the case was accordingly ordered. The court in that case confined its attention to the first clause of the 25th section of the Judiciary Act, and, in its *decision,* appears to have overlooked the third clause. That section provides for the review of the final judgments and decrees of the highest court of a State in which decisions could be had, in three classes of cases:

First. Where is drawn in question the validity of a treaty or statute of, or an authority exercised under the United States, and the decision is against their validity;

Second. Where is drawn in question the validity of a statute of, or an authority exercised under any State, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of their validity; and,

Third. Where is drawn in question the construction of any clause of the Constitution, or of a treaty or statute of,

---

* 1 Wallace, 512.

or commission held under the United States, and the decision is against the title, right, privilege, or exemption specially set up or claimed by either party under such clause of the Constitution, treaty, statute, or commission.

Under this last clause the appellate jurisdiction of this court in the case of *Roosevelt* v. *Meyer* might have been sustained. The plaintiff in error in that case claimed the right to have the bond of the defendant paid in gold or silver coin under the Constitution, upon a proper construction of that clause which authorizes Congress to coin money and regulate the value thereof and of foreign coin; and of those articles of the amendments which protect a person from deprivation of his property without due process of law; and declare that the enumeration of certain rights in the Constitution shall not be construed as a denial or disparagement of others retained by the people; and reserve to the States or the people the powers not delegated to the United States or prohibited to the States.

The decision of the court below being against the right of the plaintiff in error claimed under the clauses of the Constitution, the construction of which was thus drawn in question, he was entitled to have the decision brought before this court for re-examination.

In the present case, as the defendant claimed a similar right upon a construction of the same and other clauses of the Constitution, and a like adverse decision of the court below was made, he is equally entitled to ask for a re-examination of the decision.

But the defendant also claimed a right to demand coin in payment of the note of the plaintiff by the acts of Congress regulating the gold and silver coins of the United States, and making them a legal tender in payment of all sums according to their nominal or declared values, contending that the act of 1862, making notes of the United States a legal tender for debts, did not apply to the contract in suit. He thus claimed in fact, although he did not state his position in this form, that, upon a proper construction of the several acts together, he was entitled to payment in coin. This

right having been denied by an adverse decision, he was clearly in a condition to invoke the appellate jurisdiction of this court for a review of the decision.

Nor is the appellate jurisdiction of this court, in this case, affected by the change in the language of the third clause of the 25th section of the Judiciary Act of 1789, by the 2d section of the amendatory judiciary act of February 5th, 1867. By this clause in the latter act the judgment or decree of the highest court of a State can be reviewed " where any title, right, privilege, or immunity is claimed under the Constitution, or any treaty, or statute of, or commission held, or authority exercised under the United States, and the decision is against the title, right, privilege, or immunity specially set up or claimed by either party, under such Constitution, treaty, statute, commission, or authority." The section came incidentally before the court at the last term, in *Stewart* v. *Kahn*,\* but it was not deemed necessary to determine whether it had superseded the 25th section of the Judiciary Act of 1789. As there observed, it is to a great extent a transcript of that section; and several of the alterations of phraseology are not material. The principal addition is found in the second clause, and the principal omission is at the close of the section. But in this case, as in that, there is no occasion to express any opinion as to the effect of the new section upon the original. Under the new section, as under the old, if that be superseded, the plaintiff in error can seek a review of the decision made against the right claimed by him.

We proceed, then, to consider the merits of the case. The note of the plaintiff is made payable, as already stated, *in specie*. The use of these terms, *in specie*, does not assimilate the note to an instrument in which the amount stated is payable in chattels; as, for example, to a contract to pay a specified sum in lumber, or in fruit, or grain. Such contracts are generally made because it is more convenient for

---

\* 11 Wallace, 502.

the maker to furnish the articles designated than to pay the money.   He has his option of doing either at the maturity of the contract, but if he is then unable to furnish the articles or neglects to do so, the number of dollars specified is the measure of recovery.   But here the terms, *in specie*, are merely descriptive of the kind of dollars in which the note is payable, there being different kinds in circulation, recognized by law.   They mean that the designated number of dollars in the note shall be paid in so many gold or silver dollars of the coinage of the United States.   They have acquired this meaning by general usage among traders, merchants, and bankers, and are the opposite of the terms, *in currency*, which are used when it is desired to make a note payable in paper money.   These latter terms, *in currency*, mean that the designated number of dollars is payable in an equal number of notes which are current in the community as dollars.*

This being the meaning of the terms *in specie*, the case is brought directly within the decision of *Bronson* v. *Rhodes*,† where it was held that express contracts, payable in gold or silver dollars, could only be satisfied by the payment of coined dollars, and could not be discharged by notes of the United States declared to be a legal tender in payment of debts.

The several coinage acts of Congress make the gold and silver coins of the United States a legal tender in all payments, according to their nominal or declared values.   The provisions of the act of January 18th, 1837, and of March 3d, 1849, in this respect, were in force when the act of February 25th, 1862, was passed, and still remain in force.   As the act of 1862 declares that the notes of the United States shall also be lawful money and a legal tender in payment of debts, and this act has been sustained, by the recent decision of this court, as valid and constitutional, we have, *according to that decision*, two kinds of money, essentially different in their nature, but equally lawful.   It follows, from

---

* Taup *v.* Drew, 10 Howard, 218.    † 7 Wallace, 229.

that decision, that contracts payable in either, or for the possession of either, must be equally lawful, and, if lawful, must be equally capable of enforcement. The act of 1862 itself distinguishes between the two kinds of dollars in providing for the payment in coin of duties on imports and the interest on the bonds and notes of the government. It is obvious that the requirement of coin for duties could not be complied with by the importer, nor could his necessities for the purchase of goods in a foreign market be answered, if his contracts for coin could not be specifically enforced, but could be satisfied by an offer to pay its nominal equivalent in note dollars.

The contemporaneous and subsequent legislation of Congress has distinguished between the two kinds of dollars. The act of March 17th, 1862,* passed within one month after the passage of the first legal tender act, authorized the Secretary of the Treasury to purchase coin with bonds or United States notes, at such rates and upon such terms as he might deem most advantageous to the public interest, thus recognizing that the notes and the coin were not exchangeable in the market according to their legal or nominal values.

The act of March 3d, 1863,† amending the internal revenue act, required contracts for the purchase or sale of gold or silver coin to be in writing, or printed, and signed by the parties, their agents or attorneys, and stamped; thus impliedly recognizing the validity of previous contracts of that character without this formality. The same act also contained various provisions respecting contracts for the loan of currency secured by a pledge or deposit of gold or silver coin, where the contracts were not to be performed within three days.

Legislation of a later date has required all persons making returns of income, to declare "whether the several rates and amounts therein contained are stated according to their values in legal tender currency, or according to their values

---

* 12 Stat. at Large, 370.                    † Ib. 719, § 4.

in coined money," and if stated "in coined money," it is made the duty of the assessor to reduce the rates and amounts "to their equivalent in legal tender currency, according to the value of such coined money in said currency for the time covered by said returns."*

The practice of the government has corresponded with the legislation we have mentioned. It has uniformly recognized in its fiscal affairs the distinction in value between paper currency and coin. Some of its loans are made payable specifically in coin, whilst others are payable generally in lawful money. It goes frequently into the money market, and at one time buys coin with currency, and at another time sells coin for currency. In its transactions it every day issues its checks, bills, and obligations, some of which are payable in gold, while others are payable simply in dollars. And it keeps its accounts of coin and currency distinct and separate.

If we look to the act of 1862, in the light of the contemporaneous and subsequent legislation of Congress, and of the practice of the government, we shall find little difficulty in holding that it was not intended to interfere in any respect with existing or subsequent contracts payable by their express terms in specie; and that when it declares that the notes of the United States shall be lawful money, and a legal tender for all debts, it means for all debts which are payable in money generally, and not obligations payable in commodities, or obligations of any other kind.

In the case of *Cheang-Kee* v. *United States*,† a judgment for unpaid duties, payable in gold and silver coin of the United States, rendered by the Circuit Court for the District of California, was affirmed by this court.

It is evident that a judgment in any other form would often fail to secure to the United States payment in coin, which the law requires, or its equivalent. If the judgment were rendered for the payment of dollars generally it might, according to the recent decision of this court, be paid in

---

* 14 Stat. at Large, 147.      † 3 Wallace, 320.

note dollars, and, if they were depreciated, the government would not recover what it was entitled to receive. If, on the other hand, the value of the coin was estimated in currency and judgment for the amount entered, the government, in case of any delay in the payment of the judgment, by appeal or otherwise, would run the risk of losing a portion of what it was entitled to receive by the intermediate fluctuations in the value of the currency. From considerations of this kind this court felt justified in sustaining the judgment of the Circuit Court for California, requiring its amount to be paid specifically in coin, as being the only mode by which the law could be fully enforced.* The same reasoning justified similar judgments upon contracts that stipulated specifically for the payment of coin. The twentieth section of the act of 1792,† establishing a mint and regulating the coins of the United States, in providing that the money of account of the United States shall be expressed in dollars, dimes, cents, and mills, and that all proceedings in the courts of the United States shall be kept in conformity with this regulation, impliedly, if not directly, sanctions the entry of judgments in this form. The section has reference to the coins prescribed by the act, and when, by the creation of a paper currency, another kind of money,

---

* The twelfth section of the act of Congress of March 3d, 1865, entitled, "An act amendatory of certain acts imposing duties upon foreign importations," enacts: "That in all proceedings brought by the United States in any court for due recovery, as well of duties upon imports alone as of penalties for the non-payment thereof, the judgment shall recite that the same is rendered for duties, and such judgment, interest, and costs shall be payable in coin by law receivable for duties, and the execution issued on such judgment shall set forth that the recovery is for duties, and shall require the marshal to satisfy the same in the coin by law receivable for duties; and, in case of levy upon and sale of the property of the judgment debtor, the marshal shall refuse payment from any purchaser at such sale in any other money than that specified in the execution."

It appears, from the examination of the record in Cheang-Kee *v.* The United States, that the judgment of the Circuit Court in that case, affirmed by the Supreme Court, was rendered before this act was passed, namely, on the 8th of August, 1864.

† 1 Stat. at Large, 250, § 20.

expressed by similar designations, was sanctioned by law and made a tender in payment of debts, it was necessary, as stated in *Bronson* v. *Rhodes,* to avoid ambiguity and prevent a failure of justice, to allow judgments to be entered for the payment of coined dollars, when that kind of money was specifically designated in the contracts upon which suits were brought.

It follows from the views expressed, that the judgment of the Supreme Court of Iowa must be reversed, and that court directed to remand the cause to the proper inferior court of the State for further proceedings in conformity with this opinion;

AND IT IS SO ORDERED.

Mr. Justice BRADLEY, dissenting:

I dissent from the opinion of the court in this case for reasons stated in my opinion delivered in the cases of *Knox* v. *Lee* and *Parker* v. *Davis.** In all cases where the contract is to pay a certain sum of money of the United States, in whatever phraseology that money may be described (except cases specially exempted by law), I hold that the legal tender acts make the treasury notes a legal tender. Only in those cases in which gold and silver are stipulated for as bullion can they be demanded in specie, like any other chattel. Contracts for specie made since the legal tender acts went into operation, when gold became a commodity subject to market prices, may be regarded as contracts for bullion. But all contracts for money made before the acts were passed must, in my judgment, be regarded as on the same platform. No difficulty can arise in this view of the case in sustaining all proper transactions for the purchase and sale of gold coin.

Mr. Justice MILLER, dissenting:

In the case of *Bronson* v. *Rhodes* I expressed my dissent on the ground that a contract for gold dollars, in terms, was in no respect different, in legal effect, from a contract for

* *Supra,* p. 554

dollars without the qualifying words, specie or gold, and that the legal tender statutes had, therefore, the same effect in both cases.

I adhere to that opinion, and dissent from the one just delivered by the court.