# N. Y. SUPERIOR COURT.

EUGENE KELLY and JOSEPH A. DONOHUE agt. GEORGE N. FERGUSON.

A writen instrument which reads as follows is, in substance, a promissory note, to wit:

"$12,000.            "SAN FRANCISCO, *February* 2, 1865. ·
"On demand, at 3 o'clock P. M. of that day (no grace), for value received in legal tender notes issued by the government of the United States, I, George N. Ferguson, promise to pay Alexander Gamble, or order, $12,000, with interest from date at the rate of two per cent per month until paid, payable monthly; both principal and interest payable in the legal tender notes issued by the government of the United States.
     [U. S. Int. Rev. Stamp.]            G. N. FERGUSON."

This instrument was executed and delivered by George N. Ferguson to Alexander Gamble, as collateral security for the due performance by Ferguson of his part of an agreement, by which it had been agreed that Gamble was to loan Ferguson $6,000 in gold, and the latter was to go to the city of New York and establish himself in the livery business in the city of New York, &c., which agreement seems to have been satisfactorily carried out.

On the 1st day of October, 1866, Gamble borrowed from plaintiff's banking-house at San Francisco the sum of $5,000 in gold, for which he gave his own note, with that of said Ferguson, indorsed by him (said Gamble) as collateral security.

*Held,* that the instrument sued on was a promissory note, and that, as such, it was negotiable and transferable by indorsement. Also *held,* that the plaintiffs were not to be regarded as having any better rights on this paper than the payee, because they took it after maturity and as collateral security merely for a prior indebtedness, and, therefore, took it subject to the same defenses which defendant might have set up against Gamble, if the action had been brought by him.

But the uncontradicted testimony of the defendant showed that Gamble himself had taken the note as collateral security merely, for the repayment of a loan. This was competent, and received without objection. Any instrument, although absolute on its face, may be shown, by parol, to be a security only. The plaintiffs, therefore, could not rightfully

recover anything beyond the extent of Gamble's interest, which amounted to the sum of $6,000 in gold, and interest.

For this and other errors, new trial ordered.

*At Special Term, February,* 1873.

MOTION for a new trial on a case.

The action is brought by plaintiffs as indorsers of a written instrument, reading as follows:

" $12,000.               " SAN FRANCISCO, *February* 2, 1865.

"On demand, at 3 o'clock P. M. of that day (no grace), for value received in legal tender notes issued by the government of the United States, I, George N. Ferguson, promise to pay Alexander Gamble, or order, $12,000, with interest from date at the rate of two per cent per month until paid, payable monthly; both principal and interest payable in the legal tender notes issued by the government of the United States.

[U. S. Int. Rev. Stamp.]

G. N. FERGUSON."

This instrument was executed and delivered by George N. Ferguson to Alexander Gamble as collateral security for the due performance by Ferguson of his part of an agreement, by which it had been agreed that Gamble was to loan Ferguson $6,000 in gold, and that Ferguson was to go to New York and establish himself in the livery business there, and Gamble was to come on shortly afterwards, no particular time being stated, and if he wanted an interest in the business he was to have it.

Under this agreement Gamble did loan $6,000 in gold to Ferguson, and the latter did go to New York and established himself in the livery business in that city; but Gamble did not come on.

On the 1st day of October, 1866, Gamble borrowed from plaintiff's banking house, at San Francisco, the sum of $5,000 in gold, for which he gave his own note, with that of said Ferguson, indorsed by him (said Gamble) as *collateral* security.

The uncontradicted testimony of Gamble, taken by commission, also showed that Ferguson's note was made payable in legal tender notes for the reason that said Ferguson intended, at that time, to go to New York city, where legal tender notes were in general circulation; but that it was not for the reason that it was agreed that it should be paid in New York; that no such an agreement or understanding ever existed between them.

Upon the trial, defendant's counsel read in evidence the acts of congress authorizing the issue of United States notes, viz.:    Act of June 30, 1864 (13 *Stat. at Large, page* 218); act of February 25, 1862 (12 *Stat. at Large, page* 345); act of July 11, 1862 (12 *Stat. at Large, page* 532); act of March 3, 1863 (12 *Stat. at Large, page* 709); and then proved the different issues of the six per cent compound interest notes, issued under the act of June 30, 1864, to the extent of $248,000,000, and that these notes were not generally circulated as money at any time, within two or three months *after* their issue, but that they were bought and sold in the market after that time.   Defendant's counsel also called attention to the fact that there were two descriptions of legal tender notes of the United States; that those issued under the act of 1864 were not declared to be money, while those issued under the other acts were expressly declared to be "lawful money of the United States."

A question also arose as to alterations of defendant's note after delivery.

Both parties having rested, defendant's counsel moved for a dismissal of the complaint on the ground that the instrument sued on was not a promissory note, and, therefore, not negotiable and not transferable by indorsement, and that the plaintiffs had not obtained any title to it that would maintain the action.

The court denied the motion and defendant's counsel excepted.

Defendant's counsel thereupon presented a number of

requests to charge, upon which the court passed *seriatim.* But finally, the court determined to instruct the jury to find a special verdict upon the question as to whether the erasures in the note had or had not been made before its execution, and refused to submit any other question to the jury.

The cause having been summed up on this single point, the jury returned a verdict that the erasures in the note were made before it was signed, and, thereupon, after the rendition of such verdict, the court directed a general verdict for the plaintiffs for $32,000, the full amount claimed.

The clerk then made the following entry in the minutes:

" The jury find that the erasures were made before the note was signed, and, thereupon, the judge directs a verdict for plaintiffs for $32,000, subject to the opinion of the court at general term."

The jury were, thereupon, discharged, and on the following day a motion was made by plaintiff's counsel to correct the minutes, as entered by the clerk, by stiking out therefrom the words " subject to the opinion of the court at general term."

Defendant's counsel appeared and opposed the motion, on the ground that the jury had been discharged, and that the court had no power to alter the verdict.

The court granted the motion, and defendant's counsel excepted.

> THOMAS L. SNEED, *attorney for plaintiff.*
> JAMES CLARK, *of counsel.*
> STANLEY, BROWN & CLARK, *attorneys for defendant.*
> EDWARDS PIERREPONT, *of counsel.*

FREEDMAN, *J.*—Defendant's request, for permission to go to the jury upon the question whether it was agreed between the defendant and Mr. Gamble that the instrument in suit should be paid in New York city, was properly denied, for the reason that the court was not bound to submit this ques-

tion to the jury in the face of Gamble's uncontradicted and unimpeached denial of any such agreement. And the jury having found, by their special verdict, that the erasures in the note were made before its execution, the main question now before me, and relating to the merits, is as to the correctness of the direction of a verdict for the full amount claimed by plaintiffs. The learned judge who presided at the trial had previously, and I think correctly, held that the instrument sued on was a promissory note, and that as such it was negotiable and transferable by indorsement. He had also held, and I again agree with him, that the plaintiffs were not to be regarded as having any better rights on the paper than the payee, because they took it after maturity and as collateral security merely for a prior indebtedness, and, therefore, took it subject to the same defenses which defendant might have set up against Gamble, if the action had been brought by him. But he seems to have overlooked the fact that the uncontradicted testimony of the defendant showed that Gamble himself had taken the note as collateral security merely for the repayment of a loan. This evidence was not only competent, but was received without objection. Any instrument, although absolute on its face, may be shown by parol to be a security only ( *Van Pelt* agt. *Otter*, 2 *Sweeny*, 202, *and cases there cited.*) This being so, plaintiffs could not rightfully recover anything beyond the extent of Gamble's interest, which amounted to the sum of $6,000 in gold and interest; and under the decisions of the United States supreme court in *Bronson* agt. *Rodes* (7 *Wall.*, 229), *Butler* agt. *Horwitz* (7 *id.*, 258), *and Trebilcock* agt. *Wilson* (12 *id.*, 687), and the decision of this court in *Quinn* agt. *Lloyd* (1 *Sweeny*, 253), the verdict, as the case then stood, should have been directed for that amount only, payable in gold coin, with interest thereon, at the rate specified in the note, also payable in gold. A modification of the verdict to that exent might possibly, even now, be ordered as a condition for refusing a new trial, were it not that up to this time defendant's statement, that

Kelly agt. Ferguson.

the note represents merely a collateral security for the repayment of a loan of $6,000 in gold, is the *only* evidence before the court as to the said note being something different from what, upon its face, it purports to be ; that such evidence was given at a time when plaintiffs were unprepared to meet it, and that it is capable of being contradicted by Gamble on another trial.

This being so, and the irregularities in the submission of the case to the jury being also of sufficient weight to call for a new trial, plaintiff's exceptions must be sustained, and a new trial ordered, with costs to defendant to abide the event.