## HITTSON *v.* DAVENPORT.

1. Where the loss of a record, though of another State, is shown, its contents
may be proved like any other document, by any secondary evidence
where the case does not, from its nature, disclose the existence of other
and better evidence.

2. Where a contract is to pay so many dollars in gold, in the absence of any
waiver of this condition, payment in gold would alone satisfy the contract.

3. Where payments upon such a contract were made in currency, *held,* that
such payments discharged the contract to the amount of the gold value
at the dates of the payments.

4. Where it was in proof that the price of gold at the Gold Exchange in New
York regulated the price of gold in the United States and Territories,
evidence of the value of currency and gold in New York at the time of
payments made, *held* admissible for the purpose of determining the gold
value.

5. It being the clear intent of a contract for the payment of money, that the
payment should be in gold, the indebtedness may be found in "gold
dollars," and judgment entered accordingly.

6. Any error or defect in a record which occurs through the act or omission of
the clerk in entering or *failing* to enter of record a judgment, and is not
an error in the express judgment pronounced by the court in the exercise
of its judicial discretion, is a clerical error and amendable.

*Appeal from District Court of Arapahoe County.*

THE judgment rendered by the district court was, at the
December term, 1877, of this court, reversed with an order

of dismissal, upon the ground that a new promise was not good by way of replication to a plea of the statute of limitations in an action of debt upon a specialty. As the opinion of this court, upon the rehearing, reverses its former finding and affirms the judgment of the district court, a statement of the facts in this place may prove convenient.

Davenport, the appellee, brought an action of debt in the district court of Arapahoe county, against Hittson, the appellant, upon the following instruments:

" $5,000 gold.      PALO PINTO, TEXAS, *March* 14*th*, 1871.

On the first day of September next, I promise to pay to C. G. Davenport, five thousand dollars in gold, the same being in part consideration of cattle this day bought of said C. G. Davenport, this obligation to bear interest at ten per cent after maturity.

It is understood that this obligation is not collectible until the final termination of all litigation, now pending in the district court of Parker county, Texas, between T. C. Snailum and wife, Mary A. Snailum, and the said C. G. Davenport, in regard to a portion of said cattle, for which this note is executed. And this note not collectible at the termination of said litigation, if a judgment go against the said C. G. Davenport, in favor of said T. C. Snailum and M. A. Snailum, until said judgment shall be fully settled, paid off and discharged by the said C. G. Davenport. The object of these limitations upon the payment of this note being to save harmless the said John Hittson, in the purchase of said cattle from said litigation, or the final result of the same. Witness my hand and scroll for seal this day and year above written.

(Signed)      JOHN HITTSON,      [SEAL.]

$10,000 gold.      PALO PINTO, TEXAS, *March* 14*th*, 1871.

On the first day of May, 1872, I promise to pay to C. G. Davenport, ten thousand dollars gold, the same being in part consideration of cattle this day bought of said C. G.

Davenport, and this obligation to bear interest at ten per cent after maturity. Six thousand and fifty dollars of the amount of this note collectible at maturity, the balance of this note, three thousand nine hundred and fifty dollars not collectible until after the final termination of all litigation now pending in the district court of Parker county, Texas, between T. C. Snailum and wife, Mary A. Snailum, and the said C. G. Davenport, in regard to a portion of said cattle for which this note is executed. And the said last-mentioned amount also not collectible at the termination of said litigation, if a judgment shall go against the said C. G. Davenport, in favor of the said T. C. and Mary A. Snailum, until said judgment shall be fully settled, paid off and discharged by the said C. G. Davenport. The object of these limitations upon the payment of said last-mentioned amount of this note, being to secure and save harmless the said John Hittson, in the purchase of said cattle from said litigation or the final result of the same. Witness my hand and scroll for a seal the day and year above written.

(Signed)      JOHN HITTSON. [SEAL.]"

A number of pleas were interposed by the defendant, but the sixth plea only requires to be noticed, to wit: "That the cause of action accrued without the Territory of Colorado more than three years next preceding the commencement of this suit." Replication, that the cause of action accrued within three years.

Upon the trial Davenport obtained a verdict, which was rendered by the jury in the following terms:

"We the jury find the issues herein joined for the said plaintiff, and assess his damages by occasion of the premises in his declaration mentioned in the sum of thirty-eight hundred and twenty-four dollars and thirty-five cents ($3,824.35) in gold dollars."

The judgment of the court rendered was that the "plaintiff recover of, and from the defendant, the sum of $3,824.35, for his debt, by occasion of the premises in the

declaration mentioned in form aforesaid found to be due, and his damages, by occasion to the detention thereof, assessed at one cent and his costs," etc.

The court subsequently entered an order correcting the judgment by adding the words, "in gold dollars," after $3,824.35, and "to be paid in lawful money," after the word "costs."

The verdict was corrected to conform to the action.

Messrs. MILLER & CLOUGH, for appellant.

Messrs. WELLS, SMITH & MACON, and Mr. G. B. REED, for appellee.

Upon rehearing the following opinion was rendered by

ELBERT, J. The record in this case recites that the action was commenced on the 16th day of February, 1876. This was the date accepted as the true date, and if it is to be so regarded, there is nothing further to add to our former opinion.

The petition for a rehearing, however, claims that the suit was commenced on March 16, 1875, and an examination of the copy of the writ in the record discloses that date.

This conflict of dates did not appear in the printed abstracts, nor was it adverted to by counsel in their briefs on file. After filing the petition for a rehearing, leave was given to file briefs upon the question as to which date on the record was to control.

After an examination of the transcript, we are satisfied that the recital showing the commencement of the suit in the year 1876 is a misprision of the clerk. The other recitals of the record indicate the date of the writ as the true date.

Accepting then March 16, 1875, as the date of the commencement of the suit, it becomes necessary to inquire whether the issue presented by the plaintiff's first replication to the sixth plea, to wit: "That the cause of action accrued within three years, etc.," was supported by the evidence.

The notes were not due and payable until the determination of the suit of *Snailum* v. *Davenport*, pending in the district court of Parker county, Texas.

It sufficiently appears that the litigation mentioned in the notes was terminated in June, 1872, provided that the objections taken to the evidence by the defendant be not valid.

It is objected: 1st. That there was no sufficient proof of the destruction of the records of the court where the suit was pending; 2d. That parol evidence was not admissible to show their contents.

The objections are not well taken. A. J. Ball testifies: "There was but one suit pending; was an attorney-at-law at that time in said court; think that record was destroyed at the burning of the court-house, Parker county, Texas, on the 13th of May, 1874; there was a suit pending in said court between Mary A. Snailum and C. G. Davenport, in regard to a stock of cattle; judgment has been rendered in said cause; it was rendered in favor of Davenport; I represented Hittson in the cause."

J. L. L. McCall testifies: "There was but one suit pending in the district court of Parker county, Texas, regarding Snailum cattle; I was an attorney at the time, and employed by Mrs. Snailum; I suppose the records were destroyed at the burning of the court-house of Parker county, Texas, the 13th of May, 1874."

P. F. Brannan testifies: "The court-house was destroyed in May, 1874, and I suppose the records were destroyed at the same time."

Samuel H. Milliken testifies: "The court-house of Parker county was destroyed May 13th, 1874, and I suppose the records of said case were destroyed * * * was clerk of the district court at the time the suit of *Snailum* v. *Davenport* was disposed of."

James E. Adams testifies: "There was but the suit pending at the time spoken of, in the district court of Parker

county, Texas ; the style of the suit was *Mary A. Snailum*
v. *C. G. Davenport ;* the reason I know, I was deputy clerk;
the court-house of Parker county was destroyed by fire
May 13th, 1874, and I presume the said records and papers
in this suit were destroyed."

For the admission of secondary evidence, we think this
testimony sufficiently establishes the burning of the court-
house and the loss of the records, including the record in
question.

When the loss of a record is shown, its contents may be
proved like any other document, by any secondary evi-
dence, where the case does not, from its nature, disclose the
existence of other and better evidence. 1 Greenleaf's Ev., §
509, and cases there cited.

The record was not the basis of the action, but the object
of the evidence was simply to establish the *fact* of the ter-
mination of the litigation mentioned in the notes.

There is nothing in the fact that the record was that of a
court of another State to take it out of the rule above stated.

The termination of the litigation in June, 1872, we think
was established by competent and sufficient evidence.

These notes were payable in gold. Several payments
were made thereon in currency, and the amounts thereof
indorsed on the notes at the date of the respective payments
as having been made in currency.

Evidence was admitted to show the value of currency in
gold in New York at the date of these respective payments,
for the purpose of determining the gold value of such cur-
rency payments. This is assigned for error.

The contract was to pay so many dollars in gold. In the
absence of any waiver of this condition, payment in gold
would alone satisfy the contract. *Bronson* v. *Rhodes,* 7
Wall. 229; *Butler* v. *Horwitz,* id. 258; *Downing* v. *Sears,*
11 id. 379 ; *Trebilcock* v. *Wilson,* 12 id. 687.

Each payment in currency indorsed on the notes, only
discharged its contract to the amount of the gold value at
the date of payment. *Walkup* v. *Huston,* 65 N. C. 501.

The court correctly instructed the jury "that if the defendant claims that there was a subsequent parol agreement between parties whereby the written contracts were modified, and plaintiff agreed to accept currency at par instead of gold, that the burden of proving such agreement is on the defendant, and he must establish the same by a preponderance of evidence.    *    *    *    *    As to the manner in which payments of currency were accepted, whether in full satisfaction of a like number of dollars due upon the writings or at the value of the paper dollars in gold, you should judge by all that took place between the parties. If the money was paid and received as equivalent to gold coin, then it should be so regarded. But this must have been the understanding of both parties, that is to say, of the party paying and party receiving the money, and it is not enough that the defendant so intended, unless the plaintiff or his agent received the money as equivalent to gold coin."

" As to the value of paper money in gold coin, if you believe, from the evidence, that such value is regulated throughout the country at large by the price in New York, the price in New York at the date of each payment respectively affords a sufficient standard.    *    *    *    *    It was in proof that the price of gold at the Gold Exchange in New York regulated the price of gold in the United States and Territories."

This last instruction was based upon this evidence, and was properly given.

The objection that the judgment was for " gold dollars," instead of for so many dollars generally, is not well taken.

The cases cited *supra* are sufficient authority for saying, that as it was the clear intent of the contract that payment should be in gold, the indebtedness should have been found in gold dollars, and the judgment entered accordingly.

It is claimed that the verdict was in assumpsit, and the judgment in debt.

It is unnecessary to enter into the discussion of this objection.

It appears from the bill of exceptions that the verdict as originally rendered was corrected, and put in form by the court so as to obviate the objection made, but through what must be presumed to have been a default of the clerk, this corrected verdict does not appear to have been entered upon the record proper.

Any error or defect in a record which occurs through the act or omission of the clerk of the court in entering, or *failing* to enter of record, its judgment or proceedings, and is not an error in the express judgments pronounced by the court in the exercise of its judicial discretion, is a clerical error and amendable.   Freeman on Judgments, §§ 71–72.

The foregoing comprises all the assignments of error that we regard as claiming our attention.

The judgment of reversal heretofore entered in this cause is vacated, and the judgment of the court below is affirmed, with leave to amend the record by an entry of the verdict as corrected and put in form by the court, and presented in the bill of exceptions.

*Affirmed.*