## McADOO v. SOUTHERN PAC. CO.
### No. 3757.

District Court, N. D. California, S. D.
June 17, 1935.

Goldman & Altman and Glikbarg & Wolf, all of San Francisco, Cal., for plaintiff.

Guy V. Shoup and C. O. Amonette, both of San Francisco, Cal., and George L. Buland, of New York City, for defendant.

LINDLEY, District Judge.

This is an application for a judgment declaring plaintiff's rights as a holder of certain of defendant's bond interest coupons. The latter are payable "in gold coin of the United States," or, at the option of the holder, in guilders of the Netherlands, francs of Switzerland or currency of certain other foreign countries, and plaintiff seeks to have the court adjudge that she is entitled to payment "in lawful money of the United States or at her option in foreign moneys mentioned in the coupons." It is well to keep in mind that the option of the plaintiff contained in the coupons is not to have payment in gold of any foreign country; it is rather to have payment in the money of certain foreign countries. Defendant contends that it is relieved from payment in such form by the present laws invalidating "gold clauses."

In view of the conclusion reached, it is unnecessary to determine whether under its constitutional power to coin money and regulate the value thereof, or putting it otherwise, to provide the nation with a uniform monetary system and a sound suitable national currency, as those powers have been defined by the Supreme Court, the Congress might rightfully forbid contracts payable in currency other than that of this country. It is, rather, essential to find whether the Congress has by its legislation prohibited and invalidated such contracts. In the Gold Clause cases, Norman v. Baltimore & O. R. Co., 294 U. S. 240, 55 S. Ct. 407, 79 L. Ed. ——, 95 A. L. R. 1352; Nortz v. United States, 294 U. S. 317, 55 S. Ct. 428, 79 L. Ed. ——, 95 A. L. R. 1346; Perry v. United States, 294 U. S. 330, 55 S. Ct. 432, 79 L. Ed. ——, 95 A. L. R. 1335, the court was dealing with legislation that expressly forbade contracts payable in gold coins of the United States. There, the court said: "The Congress has enacted an express interdiction." 294 U. S. 240, 55 S. Ct. 407, 416, 79 L. Ed. ——, 95 A. L. R. 1352. The question with which the court here is primarily concerned is whether that interdiction expressly or impliedly includes contracts payable in guilders of the Netherlands or francs of Switzerland.

The Joint Resolution recites that: "Whereas the existing emergency has disclosed that provisions of obligations which

purport to give the obligee a right to require payment in gold or a particular kind of coin or currency of the United States, or in an amount in money of the United States measured thereby, obstruct the power of the Congress to regulate the value of the money of the United States, and are inconsistent with the declared policy of the Congress to maintain at all times the equal power of every dollar, coined or issued by the United States, in the markets and in the payment of debts."

The Joint Resolution, section 1 (a), 31 USCA § 463 (a), continues: "Resolved, * * * That (a) every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. * * *"

Most important in determining the effect of this resolution upon contractual provisions such as are here under consideration is the further language as follows: "As used in this resolution [section], the term 'obligation' means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term 'coin or currency' means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations." Section 1 (b) of the Joint Resolution (31 USCA § 463 (b).

The unambiguous provision of the resolution then, is to declare unlawful clauses requiring payment in gold of any obligation "payable in money of the United States," in "coin or currency of the United States." The act by its own language carefully limits its force to "obligations payable in money of the United States," and purports to deal only with "coin or currency of the United States." The bar of illegality, by its own terms, is defined

and limited in effect. Congress was dealing with contracts calling for payment in gold coin of the United States; not with contracts payable in money of foreign countries. The preamble of the resolution so indicates. If we give full force and effect to the unambiguous language employed, we are unable to point out any words that disclose any intent to extend the prohibition further than that language clearly indicates. Consequently, the rights and liabilities of the parties in the contracts under consideration, not being within the legislation, are the same as if the resolution had never been adopted. Accordingly the decisions of the Supreme Court prior to the legislation under discussion are of controlling import. For full exposition, see Bronson v. Rodes, 7 Wall. 229, 19 L. Ed. 141; Butler v. Horwitz, 7 Wall. 258, 19 L. Ed. 149; Dewing v. Sears, 11 Wall. 379, 20 L. Ed. 189; Trebilcock v. Wilson, 12 Wall. 687, 20 L. Ed. 460; Thompson v. Butler, 95 U. S. 694, 24 L. Ed. 540; Gregory v. Morris, 96 U. S. 619, 24 L. Ed. 740. See, also, The Vaughan and Telegraph, 14 Wall. 258, 20 L. Ed. 807; The Emily Souder, 17 Wall. 666, 21 L. Ed. 683. As the Chief Justice pointed out in the Gold Clause opinion, in Bronson v. Rodes, supra, 7 Wall. 229, page 251, 19 L. Ed. 141, the court held that the Legal Tender Acts of 1862 and 1863, apart from any question of their constitutionality, had not repealed or modified the laws for the coinage of gold and silver or the statutory provisions which made those coins legal tender in all payments. It followed, said the court, that "there were two descriptions of money in use at the time the tender under consideration was made, both authorized by law, and both made legal tender in payments. The statute denomination of both descriptions was dollars; but they were essentially unlike in nature." Until the Congress shall attempt to extend the power heretofore exercised to contracts calling for payment in foreign money, it is futile for the court to enter upon any exposition of the propriety of such action.

■ It is insisted that the clauses were inserted in the coupons here involved for the benefit of foreign holders thereof and for them alone. But they contain no such words of limitation, and the court has no right to read into a document limitations in no way implied.

Nor can it be said that impossibility of performance defeats the cause of action. True, the President, under act of Congress, has forbidden possession of gold. But clearly the money of foreign countries is a commodity and on the same footing as other commodities. Butler v. Horwitz, 7 Wall. 258, 19 L. Ed. 149, Forbes et al. v. Murray, Fed. Cas. No. 4,928, and The Edith, Fed. Cas. No. 4,281. Guilders and francs are dealt in, upon the exchanges of the country, as are securities, grains, and other chattels. They have a well-established current value in terms of money of this country. The damages for breach of contract to deliver them are determinable with facility. To put a homely illustration, it is as if one should borrow his neighbor's cow for the season at a specified rental and covenant to return it at all hazards. If for any reason it should be impossible to return the borrowed article, can it be doubted that the borrower must account for its value? The Supreme Court has applied this doctrine to financial contracts in Bronson v. Rodes, supra, and Trebilcock v. Wilson, supra. In Butler v. Horwitz, 7 Wall. 258, 260, 19 L. Ed. 149, the court said: "Damages for non-performance of such a contract may be recovered at law as for non-performance of a contract to deliver bullion or other commodity. But whether the contract be for the delivery or payment of coin or bullion, or other property, damages for non-performance must be assessed in lawful money; that is to say, in money declared to be legal tender in payment, by a law made in pursuance of the Constitution of the U. S."

The effect of Serbian Loan Case, and Brazilian Loan Case, Publications de la Cour Permanente de Justice Internationale, Series A, Nos. 20, 21, pp. 5–89, 91–155, was to require each of the two governments to pay about five times as many French paper francs, or new French gold francs, as they would have been required to pay if the court had not held that the gold clause meant a "gold standard of value." To the like effect is Feist v. Societe Intercommunale Belge d'Electricite, L. R. [1934] A. C. 161, which involved bonds of a Belgian corporation promising to pay in gold coin of the United Kingdom or equal to the standard of weight and fineness existing on September 1, 1928.

Inasmuch, therefore, as the Congress has enacted no legislation affecting the contracts here in question and there is no difficulty in ascertaining the holder's damages, it follows there must be a judgment adjudicating such rights in accordance with this memorandum. The judgment will limit the plaintiff's right to recover payment in foreign money, however, to compliance with the language of the coupons, viz., presentation at the place provided. Her rights to damages will arise upon refusal of such payment. Proper form may be submitted.