WILLIAM BRIDGES v. NORMAN REYNOLDS.

1. In a suit on note which, according to its terms, was given for land, if the petition correctly describe the land, and the defendant fail to answer, judgment by default may be rendered foreclosing the vendor's lien and directing the sale of the land, without the intervention of a jury.
2. But if it appear from recitals on the face of the note that the land had been conveyed by the purchaser to a third party before the execution of the note, no judgment ordering a sale of the land should be rendered in a proceeding to which the second purchaser is not a party.

3. When service of petition is accepted and five days notice waived by a defendant, and the petition is not filed by the first day of the term, no judgment by default can be taken at that term.

4. A promissory note which binds the maker to pay " in gold, or its equivalent in United States currency," entitles the debtor to pay either in gold or United States currency in amount equal to the value of the gold at the maturity of the debt, at the debtor's option; but if the debtor fail to make a tender in currency, upon suit judgment may be rendered against him for gold, as a liquidated demand, without the intervention of a jury.

ERROR from Titus. Tried below before the Hon. J. D. McAdoo.

The assignments of error which are noticed in the opinion are as follows :

1. The court erred in rendering judgment enforcing the vendor's lien without the intervention of a jury.

2. The court erred in enforcing the vendor's lien and ordering a sale of the land without a sufficient description of the same.

5. The court erred in rendering judgment by default upon a petition upon which service was accepted, which was not filed the first day of the term.

6. The court erred in not rendering judgment "for dollars and parts of dollars," instead of "for gold coin."

*Stephens & Turner*, for plaintiff in error, cited, in support of the first and third assignments, Pressly v. Testard, 29 Texas, 199; Davenport v. Chilton *et al.*, 25 Texas, 518 ; Murray v. Land, 27 Texas, 89.

In support of the fifth assignment, Paschal's Digest, Article 508, Note 594 ; Glenn v. Shelburne, 29 Texas, 125.

In support of the sixth assignment, Van Alstyne v. Sorley, 32 Texas, 518; Killough v. Alford, 32 Texas, 457; Flournoy v. Healy, 31 Texas, 59; 32 Texas, 568.

Defendant in error filed the following brief :[1]

The petition alleged that the note sued on was given by

---

[1] This brief is not signed by any one, and the docket does not indicate who was of counsel for defendant in error.

defendant for the purchase money due from him for the lands described.

Defendant having made default, thereby confessed the facts alleged, and it only remained for the court to render judgment for the amount due upon the note, foreclose the lien, and decree the sale of the lands.   On this point we refer to Shelton v. Niblett, 28 Texas, 548.

In answer to the fifth assignment of error, we refer the court to the acknowledgment of service as made by the defendant, and endorsed on the original petition.   From that it will be seen that he not only accepts service, but he also waives the five days notice required by law, and accepts service as if made more than five days prior to the ninth of March, 1872.

It will be further observed, by reference to the original petition, that the term of the court to which suit was brought is clearly stated to be the March term, 1872.   Of this the defendant had notice when he accepted the service, and by his waiver of the five days required by law, he clearly consented that the petition should be acted on at that term of the court.

We contend, that the waiver of the defendant operated for all purposes against him and in favor of the plaintiff, and that his acknowledgment of service, couched in the language that it is, takes this case of the rule laid down by the court in Glenn v. Shelburne, 29 Texas, 125, cited by plaintiff in error.   In that case, there was a simple acceptance of service ; in this, defendant waives time.   In that case, the petition was not filed until the fourth day of the term; in this, it was filed the second day of the term.   In that case, the plaintiff filed an amended petition ten days after the term of court commenced, of which the defendant had no notice; and this latter fact we take to be one of the controlling "circumstances" that induced the court to reverse the judgment in that case.

The supposition of a six weeks term, as made by the

court in that case, cannot apply to this case, as the petition in this was filed on the second day of the term, and judgment taken on the fifth day. Then, the defendant in this case had full four days to advise himself of what was going on in the court to which the petition was entitled, and in which he, by his acknowledgment of service, had consented that judgment should be taken.

We contend, that the court did not err in rendering a judgment for gold dollars. It will be seen, by reference to the note sued on, that the contract was to pay in gold. The question, then, is, was the contract lawful? If it was, then the court was bound by law to enforce the contract. The defendant promised to pay in gold, and any action that would deprive the plaintiff of his right to compel payment in gold would, to that extent, impair the obligation of the contract.

We refer the court to Harrell v. Barnes, 34 Texas, 434.

REEVES, ASSOCIATE JUSTICE.—This was a suit brought by Reynolds against Bridges on the following described note:

"$1500.00.

"By the twenty-fifth day of December, A. D. 1871, I promise to pay J. J. Cason, or bearer, fifteen hundred dollars in gold, or its equivalent in U. S. currency, with ten per cent. interest from the 25th day of December, 1870, until paid, it being in part payment of certain tracts of land this day deeded to T. J. Coffey by the said J. J. Cason. This October 8th, 1870.

(Signed)                                "WM. BRIDGES."

The suit was brought to the March term, 1872, of the District Court of Titus county. On the ninth of March, 1872, the defendant, Bridges, accepted service of the petition, waiving citation and copy, and also waiving the five days notice required by law, and accepted service as if

made more than five days prior to that date. The court commenced its session on the eleventh of March, two days after the acceptance of the service. The petition was filed with the clerk on the twelfth of March, and a judgment by default was taken on the fifteenth of March for the amount found to be due on the note, after allowing credit for a previous payment, "in gold coin," with an order directing the sale of certain tracts of land, for which the note was given as part of the purchase money, as alleged in the petition.

The defendant failed to appear in the court below, and now brings up the case on error, and complains, among other grounds, that the lands were not described with sufficient certainty, and that the lien was enforced without the intervention of a jury.

The note, as will be seen, was given in part payment of certain tracts of land deeded by Cason to Coffey, without further description.

The petition alleges that the note was given by the defendant to Cason as part of the purchase money for two small tracts of land—one for three acres, and the other for five—and a store house and lot in or near the town of Snow Hill, in Titus county. The first tract begins at the south-east corner of a fourteen acre tract "made for H. C. Gregg to John Henderson." The calls for course are given without giving distances, as should have been done where the tract was intended to be described by metes and bounds. It is stated to be a three-acre tract, and is further described as the land where J. J. Cason's residence stood at the date of the note, on the eighth of October, 1870. The tract could perhaps be identified by this description. There can be no well founded objection to the description of the other tract and the town lot. The defendant failing to appear and answer, the averments of the petition are taken as true; and the cause of action being liquidated, there was no fact to be found by a jury,

and there would have been no error in rendering judg-
ment by default and directing the land to be sold if it had
not been wrong for another reason. (Niblett v. Shelton,
28 Texas, 548, and authorities there referred to.)

It appears from the note that it was executed by the
defendant, Bridges, though the land for which it was
given as part of the purchase money had been deeded by
Cason to Coffey. It is not shown, by averment or otherwise,
by what authority these lands could be sold by a decree,
after they had been conveyed to another party, as seems
to have been done from the recitals in the note. Coffey
is not a party to the suit, though it seeks to make the
land conveyed to him subject to the lien. If this note
was taken from Bridges as a distinct and independent se-
curity for the debt due from Coffey to Cason, it would
be *prima facie* evidence that the lien was waived. If
such was not the case, the transaction, whatever it was,
ought to be shown by appropriate averments, with proper
parties to contest it, that their rights might be protected.
(Parker County v. Sewell, 24 Texas, 238.)

The fifth ground of error is, that the court erred in ren-
dering judgment by default upon a petition upon which
service was accepted, and which was not filed the first
day of the term.

The defendant, as already stated, waived the five days
notice required by law, and accepted service as if made
more than five days before the date of acceptance.

The objection here made was decided by this court in
the case of Glenn v. Shelburne, 29 Texas, 125. In that
case it was held, that the proper practice, in cases where
service of process is acknowledged, is to file the petition
at least by the first day of the term after acknowledgment
of service.

In this case, the petition not being filed until after the
commencement of the term, the plaintiff was not entitled
to a judgment by default at that term of the court.

14

The acceptance of service, when intended to retroact upon past time, and to operate as if the service had been accepted at a prior date contrary to the fact, is questionable as a correct rule of practice.

On another ground, a judgment by default without process would be, in effect, a judgment by confession, without swearing to the justness of the debt, as required by Article 1477, Paschal's Digest.

The sixth and last ground is for error in rendering judgment for gold and not for dollars generally.

The history of the loan and currency acts of 1862 and 1863 is well known to the profession and the country.

These acts and the notes issued under them and intended to circulate as money have been the subjects of decision in the courts, State and Federal, and in various modes have been brought under investigation, official and otherwise. The decisions are far from being uniform, and, weakened perhaps by dissenting views, have not always been accepted as satisfactory.

These acts provide that the notes issued under their authority "shall be received in payment of all taxes, internal duties, levies, debts and demands due to the United States, except duties on imports, and of all claims and demands of any kind whatever against the United States except interest on bonds and notes, which shall be paid in coin, and shall also be lawful money and legal tender in payment of all debts, public and private, within the United States, except duties on imports."

The clause in these statutes making these notes legal tenders for debts received a construction by the Supreme Court of the United States in the case of Lane County v. The State of Oregon. It was held, "that these clauses have no reference to taxes imposed by State authority, but relate only to debts in the ordinary sense of the word arising out of simple contracts, or contracts by specialty, which include judgments and recognizances." (7 Wallace, 71.)

This was at the December term, 1868. At the same term the case of Bronson v. Rhodes (7 Wallace, 229) was decided. The bond which was the subject of controversy in that case was executed in 1851, and was payable "*in gold and silver coin*, lawful money of the United States."

In January, 1865, United States notes, nominally equal to the principal and interest due upon the bond, had been tendered and refused ; and the questions were, *first*, whether the holder of the bond was bound to receive the notes in satisfaction of his gold demand ; and *secondly*, as to the form of the judgment.

In answer to the first, it was held, "that express contracts to pay coined dollars can only be satisfied by the payment of coined dollars, and that they are not debts which may be satisfied by the payment of United States notes."

And secondly, "when contracts made payable in coin are sued upon, judgments may be entered for coined dollars and parts of dollars; and when contracts have been made payable in dollars generally, without specifying in what description of currency payment is to be made, judgments may be entered generally without such specification."

The basis of this decision is, that there were two descriptions of money in use at the time of the tender, both authorized by law and made legal tenders in payments, and that there was nothing in the currency acts that would make it unlawful to stipulate for the payment of coined dollars, or that would prevent the courts from enforcing the contract as understood by the parties.

Butler v. Horwitz, 7 Wallace R., 258, was a lease of a lot of ground in the city of Baltimore, made in 1791, for ninety-nine years, "reserving a yearly rent of £15 current money of Maryland, payable in English golden guineas, of a certain weight and fineness, and other gold and sil-

ver, at their present established weight and rate, according to act of Assembly, on the first day of January, in each and every year during the continuance of the present demise." It being agreed that the £15 were equal to $40 in gold and silver, that amount as the annual rent, due January 1, 1866, was tendered in currency and refused. Suit was brought in the Court of Common Pleas in Maryland to recover the value of the gold in currency. The court below gave judgment for its value in currency at a premium on gold of $1.45. On review before the Supreme Court, the judgment was reversed and remanded, the court holding that the judgment should have been entered in coin for the amount agreed to be due.

In Hepburn v. Griswold, 8 Wallace, 603, the word "debts," as used in the currency acts, is fully examined, and the discussion is amplified beyond what was done in Bronson v. Rhodes. In the latter, the decision was made to rest mainly on the terms of the act, and the word "debts" was held not to include obligations created by express contract for the payment of gold and silver, whether coined or in bullion.

In Hepburn v. Griswold, the plaintiff sued on a note due in 1862, and which was payable in "dollars" generally. After suit, the defendant tendered in United States notes the amount of principal and interest, with costs, in satisfaction of the claim, which was refused. The chancellor declared the tender good, and adjudged the debt to be satisfied. The plaintiff took the case to the Court of Errors of Kentucky, which reversed the chancellor's judgment, and remanded the case, with instructions to enter a contrary judgment. The defendant took the case to the Supreme Court of the United States, where the judgment of the Court of Errors was affirmed to the effect that the plaintiff was not bound to receive currency in payment of his debt, contracted before the passage of the currency acts, though payable in dollars generally.

This case approves and re-affirms the cases of Lane County v. Oregon, Bronson v. Rhodes, and Butler v. Horwitz, and goes a step further and decides the legal tender acts to be unwarranted by the Constitution, in so far as they make the notes authorized by these acts legal tenders in payment of debts contracted before their passage.

Knox v. Lee, and Parker v. Davis, 12 Wallace, 457, hold these acts to be constitutional, both as to contracts made before and after their passage, overruling Hepburn v. Griswold, on the point that the acts were unwarranted by the Constitution, as applied to contracts made before their enactment. This was in 1870.

Trebilcock v. Wilson, 12 Wallace, 687, was a suit on a promissory note, given in June, 1861, and due in 1862, "payable in specie." A tender in United States notes had been made, as in the other cases referred to, and refused. The District Court in Iowa held, that the tender in notes was sufficient. On appeal to the Supreme Court of the State, this decree was affirmed. On error to the Supreme Court of the United States, in 1871, this judgment was reversed. Justice Field, in delivering the opinion of the court, says: "If we look to the act of 1862 in the light of the contemporaneous and subsequent legislation of Congress, and of the practice of the government, we shall find little difficulty in holding that it was not intended to interfere in any respect with existing or subsequent contracts payable by their express terms in specie, and that when it declares that the notes of the United States shall be lawful money and a legal tender for all debts, it means for all debts which are payable in money generally, and not obligations payable in commodities, or obligations of any other kind."

These cases were decided by a divided court, but they are not reversed. The opinion in Hepburn v. Griswold on the constitutionality of the legal tender acts, as

applied to that particular case, was overruled in Knox v. Lee and Parker v. Davis, but in other respects, and as to so much of the decision as rests upon a construction of the clause of the act to the effect that demands upon contracts which stipulate for the payment of coin must be paid in coin, it must be regarded as still the decision of the court.

Taken together, the cases recognize two descriptions of lawful money in use at the time the tender was made—gold and silver, and note dollars issued by authority of the legal tender acts ; and that a contract to pay in gold or silver coin will be enforced for gold and silver coin, according to the intention of the parties. But in the absence of a contract expressing a different intention, payment will be enforced for dollars and cents generally, without further specification as to the medium of payment; and when sued upon, judgment will be entered accordingly in either case.

The case of Harrell v. Barnes, 34 Texas, 413, follows Hepburn v. Griswold, 8 Wallace, 603, and not the cases of Shaw v. Trunsler, 30 Texas, 391; Van Alstyne v. Sorley, 32 Texas, 518; Flournoy v. Healy, 31 Texas, 590; Killough, Guardian, v. Alford, Administrator, 32 Texas, 457; and perhaps other cases, in which it was held, that judgments on contracts for coin, entered into before the passage of the legal tender acts, should be rendered for dollars generally.

It is believed that the opinion in Bronson v. Rhodes, that express contracts to pay coin can only be satisfied by the payment of coin, applies to contracts made after as well as before the passage of the legal tender acts, and that they are not debts in either case in the meaning of the act, which may be satisfied by the tender of United States notes. However that may be, it is clear that that is the meaning of Hepburn v. Griswold, and Trebilcock v. Wilson, on the construction given to the act itself, aside from the constitutional question.

If parties in their contracts may discriminate in favor of coin, as possessing a higher market value than currency, it follows, that they may stipulate to pay a certain sum in coin, or its equivalent in currency, as an alternative.

Applying these principles to the case before us, and following the decisions of the Supreme Court of the United States, without discussing the constitutional question, the defendant, Bridges, might have discharged the note in currency in amount equal to the value of the gold at maturity of the note. But failing to make a tender in currency, the plaintiff was authorized to treat it as a promise to pay so many gold dollars; and the amount being ascertained by the note, there was no error in rendering judgment by default for gold as a liquidated demand, without the intervention of a jury.

The alternative promise to pay in currency was for the benefit of the defendant, if he chose to avail himself of it. But it does not appear that he did so, or that he appeared at the time the judgment was rendered, and by plea or answer offered any reason why the judgment should not be rendered for gold. But, because the court erred in rendering judgment at the same term when the petition was filed, the cause is reversed and remanded for further proceedings.

REVERSED AND REMANDED.

GRAY, ASSOCIATE JUSTICE.—In this case I concur in the opinion of the court, that *a contract* expressly payable in "*gold or specie,*" is a contract for so many coined dollars, gold or silver; and that when payable "in gold or specie, or its equivalent in currency," the option is given to the debtor at the maturity of the obligation to pay either the coined dollars, or their market value in currency dollars; but that on failure to exercise his election the obligation becomes an express contract for coined

dollars. While I also concur that the judgment to be rendered on *express contracts* for coined or specie dollars is to be in kind, or specifically for coined dollars, yet I deem it proper to say that my concurrence in this latter proposition is exclusively based on the authority of the decisions of the Supreme Court of the United States, as they now stand, in construction of the currency or legal tender laws of the government. The decisions of that tribunal in construing the acts of Congress, treaties, etc., are, in my judgment, conclusive on the State courts, and should be followed, when they are clear and decisive on the question; and this, I take it, is so on this question of judgment on express *contracts* for dollars, or in specie dollars. (Bronson v. Rhodes, 7 Wall., 229; Butler v. Horwitz, 7 Wall., 258; Trebilcock v. Wilson, 12 Wall., 687.) But while I follow those decisions, I do not appreciate the force of the distinction made in them as to contracts, and in two other cases as to damages to be assessed, which will be mentioned; and I think those cases are inconsistent *in principle* with the two others, and also with the decision in Parker v. Davis, 12 Wallace, 457, maintaining the constitutionality of the legal tender act of 1862. Thus, assuming the constitutionality of that act, and others subsequent to it, making *promises to pay dollars* on paper of certain denominations a national currency. and themselves dollars (that is, the representative of a thing the thing itself signified), then it follows as a necessary consequence, in my judgment, that those subsequent acts are inconsistent with and antagonistic to the former laws, which made coined dollars of gold or silver the national currency, and legal tenders for debts payable in dollars.

The manifest intention of those later acts was to create and establish one uniform national currency, consisting of national treasury notes, based on the credit of the general government, and that these notes should be the *common currency* and standard of values. Such was the

intention, it is to be presumed, because such was the natural and reasonable effect to be produced ; and such was, almost universally, the actual consequence. Gold and silver dollars disappeared almost universally as a currency or circulating medium, and treasury notes took their place; save only in the specially excepted instances of government transactions, payment of import duties, interest on public debt, and the like. These exceptions do not vary the general proposition that currency dollars became the standard and general medium of trade as national money ; while gold and silver dollars became marketable commodities, on which taxes could be and were levied, and with which import duties were required to be paid. Lawful contracts might be made for the delivery of them as bullion ; or, *eo nomine*, as coined dollars of the United States mintage ; because the law regulated the weight and fineness of such mintage of gold and silver, and a contract for so many gold dollars was in fact a contract for such quantity of gold, of a specified weight and fineness, in the specific form and stamp known as dollars. The legal tender acts did therefore repeal the former coinage acts in so far as coined dollars were made the legal money currency of the country in transactions between individuals and proceedings in the courts, and substituted the legal tender treasury notes as the uniform standard and currency for the whole country.

It follows, from these views, that all judgments of courts should be for dollars generally, and that the judgment on breach of an express contract for coined dollars or specie should be the value of those articles in currency dollars at the time of the breach of the contract. It is clear to my mind that the decision in Butler v. Horwitz, 7 Wallace, 258, in this respect, is inconsistent with the constitutionality of the legal tender acts ; and it seems to me plain that it is also inconsistent with the doctrines maintained in Knox v. Lee, 12 Wall., 457, as to the currency in

which damages should be assessed by a jury, when the evidence was only of its specie value; and also with the case of "The *Vaughan* and *Telegraph*," 14 Wall., 258, where damages for breach of a contract of carriage and loss of goods was held to have been rightly assessed in currency, at the specie value of the goods in Canada, with the premium on that value in currency of the United States, at the time of loss, although that premium had greatly diminished before the judgment. These latter cases, in my judgment, are correct in principle, on the assumption that the legal tender acts are constitutional. The inconveniences and impracticable consequences to which a contrary doctrine will lead in the proceedings of courts, and other business among men, will ultimately require conformity in judgments to but one kind of currency.