MALINDA IRVIN v. NANCY E. AND MARY A. GARNER.

1. VENDOR'S LIEN.—The authorities are abundant that the vendor's lien exists for the purchase-money of land sold, unless expressly or impliedly waived, and the burden of proof is on the vendee and those claiming under him to show such waiver.

2. WAIVER OF VENDOR'S LIEN.—Whether the lien has been waived or not, is one of intention, to be ascertained from the facts and circumstances of each particular case.
3. SAME.—The vendor's lien is not waived (1) by the substitution of a third person for the original vendor as payee of the note given for the purchase-money; (2) nor by the subsequent execution of a new note, with accrued interest, for the original one ; (3) nor by taking a deed of trust upon the same land to secure the purchase-money note.
4. A VERDICT upon a note payable in gold and not so finding is error.
5. VERDICT.—A verdict ascertaining the principal, rate of interest, and date of a note, is sufficiently certain as a verdict for the amount.

APPEAL from Cass. Tried below before the Hon. James H. Rogers.

This is a suit brought by J. R. Irvin against Nancy E. and Mary A. Garner, on a joint promissory note, as follows, to wit:

"On or before the 3d day of January, 1873, we promise to pay to J. R. Irvin, or bearer, the sum of six hundred and thirty-two $\frac{50}{100}$ in gold coin, bearing 12 per cent. interest; it being for the purchase-money of a certain tract or parcel of land known as the tract or parcel of land whereon Nancy E. and Mary A. Garner now lives, for value received of him this December 23d, 1872.

(Signed,)      NANCY E. GARNER.<br/>MARY A. GARNER."

The petition sets out the note, and alleges that it was the purchase-money for a tract of land, and "that said Nancy E. and Mary A. are now in possession of said land by virtue of a purchase and title deed from one George Vaughan." It then describes the locality and boundaries of the land, and gives notice to defendants to produce the said deed on the trial of the cause, alleges the non-payment of the said money, and prays for judgment for the same, and "for an order of court to sell the above-described tract or parcel of land, containing one hundred acres, to pay off and satisfy vendor's lien on the premises." The defendants answer by general exception, by general denial, and by special plea, sworn to,.

4

in the nature of a plea of *non est factum*, stating that the note was read to them as an ordinary promissory note, bearing the legal rate of interest, "and not as a promissory note for land, to bear interest at the rate of 12 per centum."

The verdict of the jury was in favor of the plaintiff on the note, and that the land was not subject to the vendor's lien; and judgment being rendered accordingly, the plaintiff brings the case by writ of error to this court, to reverse the judgment, because his claim of vendor's lien was adjudged against him.

There was no ruling of the court upon the exceptions, and exceptions taken to the evidence. The question in the case arises upon the facts in evidence and the charge of the court upon them. Additional facts are given in the opinion.

*O'Neal & Son*, for appellant, cited Pinchain v. Collard, 13 Tex., 333; Jackson v. Hill, 39 Tex., 495; Cannon v. Bonner, 38 Tex., 491; Brightman v. Word, 37 Tex., 311.

BONNER, ASSOCIATE JUSTICE.—The principal questions involved in this case arise upon the legal effect on the vendor's lien of—

First. The substitution of a third person for the original vendor as payee of the note given for the purchase-money.

Second. The subsequent execution of a new note for the original one.

Third. Whether the taking of a deed of trust upon the same land necessarily releases the vendor's lien.

The facts, as developed by the testimony, are substantially that the one hundred acres of land upon which the vendor's lien is sought to be enforced were formerly owned by one J. S. Irvin, who is not a party to the record. He sold the same to one George Vaughan and received his note for the purchase-money. Afterwards J. S. Irvin bought land from J. R. Irvin, the original plaintiff below, and traded to him, in payment thereof, the note which J. S. Irvin had received

from George Vaughan. Subsequently, Vaughan sold and deeded the one hundred acres of land which he had purchased from J. S. Irvin to the defendants below, Nancy E. and Mary A. Garner, for the sum of $1,050. Of this amount $500 was paid down in cash, and, by consent of all the parties, for the remainder, of $550, the defendants executed and delivered their note to the plaintiff, J. R. Irvin, and also executed to him a deed of trust on the land to secure the same; and the note held by him on Vaughan was given up.

Afterwards, the note given to J. R. Irvin not having been paid, the defendants executed and delivered to him a new note for the principal and accrued interest, but did not take new deed of trust.

The new note was dated December 23, 1872, payable on the 3d day of January, 1873, to J. R. Irvin, for the sum of $632.50 in gold coin, with interest at the rate of twelve per centum, and reciting therein that it was given for the purchase-money of the land.

The suit was instituted on the 18th of November, 1873, in the usual form, with prayer for judgment for principal and interest in gold coin and enforcement of vendor's lien.

On the 4th of December, 1873, the defendants answered by general exception and general denial; and on the 4th of April, 1875, they filed a special plea of *non est factum*, sworn to by Mary A. Garner, in which they do not deny having signed the note, but say that the same was read over to them by the plaintiff as an ordinary promissory note for the sum of money therein mentioned, to bear eight per centum interest only, and not as a promissory note for land, to bear interest at twelve per centum.

The jury returned a verdict for the plaintiff for $632.50 principal, with interest at twelve per centum from the 3d day of January, 1873, date of maturity of note, and that the land was not subject to the vendor's lien.

Judgment was rendered for the plaintiff for $632.50 only,

and that the vendor's lien did not exist. Neither the verdict nor judgment specified that it was for gold coin.

Motion for new trial overruled, and this writ of error prosecuted by Malinda Irvin, as surviving wife of J. R. Irvin, now deceased.

The first error assigned is to that portion of the charge in which the court, after instructing the jury in regard to the effect upon the vendor's lien of the taking a new note, sums up his instructions upon this issue as follows: "In other words, if the proof satisfies you that the note sued on is for a greater amount, either as to principal or interest, than the original note given for the land to Vaughan, the said note sued on being given to the plaintiff, and a new note, being for a different amount and to a different person, cannot and does not hold on the land the vendor's lien."

This charge is objected to because contrary to law, and because it assumes a state of facts not in evidence, in this: that the first note was given to Vaughan, when in fact it was given to plaintiff Irvin.

This charge assumes, as a proposition of law, that if a new note for the purchase-money of land is given to another than the vendor, and for a greater amount than originally promised, the vendor's lien does not attach.

There is no question, under the evidence, but what the note sued on was both given to some other person than the vendor and was for a greater amount; and the jury, in returning a verdict against the vendor's lien, must necessarily have been controlled by this charge, unless they found against it under the plea of *non est factum.* This being a special plea, the burden of proof of this matter in evidence was on the defendants. (Muckleroy *v.* Bethany, 27 Tex., 551; 2 Greenl. Ev., sec. 300.)

The evidence seems not to have been satisfactory to the jury that the note was to bear interest at the rate of eight per centum only, as averred in this plea, as they returned a verdict for interest at the rate of twelve per centum, as specified in

the note; and it is reasonable to presume that the same testimony was not more satisfactory on the question of the vendor's lien, and hence that the jury must have been influenced by the charge.

The vendor's lien is said to have had its origin in a country where lands were not liable, either during the life of the debtor or after his death, for all personal obligations indiscriminately, including debts by simple contract; and it seems to have been considered as a natural equity that the creditor whose debt was the consideration of the land should, by virtue of that consideration, be allowed to charge the land upon the failure of personal assets. It was probably derived from the civil law, and has been ingrafted upon our system from the English chancery courts. It is said by Lord Eldon, in his elaborate opinion in the leading case of Mackreth *v.* Symmons, 15 Ves., 329, (1 Lead. Cas. in Eq., 194,) that it rests upon the principle, "that a person having got the estate of another shall not, as between them, keep it and not pay the consideration."

As quoted in the early case of Briscoe *v.* Bronaugh, 1 Tex., 330, "there is a natural equity that the land should stand charged with so much of the purchase-money as was not paid, and that without any special agreement for that purpose."

The tendency, particularly of our more recent decisions, is to encourage and protect this character of lien, when the rights of innocent third parties are not prejudiced thereby, and it has now become with us a common and important basis of credit and investment.

It is not perceived why, on principle, this "natural equity" should not continue to exist, unless expressly or impliedly waived, so long as the relation of creditor and debtor remains in force by the failure to pay the purchase-money, and particularly where the parties are the same and no rights of innocent third persons have intervened.

The authorities are abundant, including the above case of

Briscoe *v.* Bronaugh, that the lien exists, unless expressly or impliedly waived, and that the burden of proof is on the vendee and those claiming under him to show such waiver.

What facts will amount to a waiver of the vendor's lien has long been a vexed question, and it would have saved much litigation to have adopted by legislative enactment the valuable suggestion of the lord chancellor in the opinion in the leading case of Mackreth *v.* Symmons, above quoted, "that it would have been better at once to have held that the lien should exist in no case, and the vendor should suffer the consequence of his want of caution; or to have laid down the rule the other way so distinctly that a purchaser might be able to know, without the judgment of a court, in what cases it would and in what cases it would not exist."

Whether the lien has been waived or not, as a judicial question, is one of intention, to be ascertained from the facts and circumstances of the particular case. (Cordova *v.* Hood, 17 Wall., 1; Pope *v.* Graham, 44 Tex., 199.)

The fact of the execution and delivery of a note for the purchase-money of land to a third person substituted for the vendor, particularly as in this case, where this third person advances the consideration to the vendor, would not, of itself, release the lien. (Pinchain *v.* Collard, 13 Tex., 336; Ellis *v.* Singletary, 45 Tex., 36.)

Neither would the fact that the new note was given for the principal and accrued interest have this effect. (Swain *v.* Cato, 34 Tex., 395; Mims *v.* Lockett, 23 Ga., 237.)

In note *c*, 4 Kent, (12th ed., by Holmes,) 153, it is said: "It is undoubted law, that the mere fact of taking a new note in place of an old one secured by mortgage and about to expire does not discharge the mortgage security," citing authorities, and adds, "and the same principle has been applied to the vendor's lien."

Both propositions contained in this note have been affirmatively settled by this court. In Wright *v.* Wooters, 46 Tex., 380, it is held, that the renewal of a note secured by mort-

gage is not, of itself, unless so intended, a waiver of the mortgage; and in Ellis *v.* Singletary, 45 Tex., 27, and which on this point seems to qualify that of Jackson *v.* Hill, 39 Tex., 493, it is held, that the substitution of a new note, signed by another party, for the note secured by the vendor's lien, will not, of itself, discharge such lien; and that even the taking of additional personal security will not affect the lien, where there is an express agreement that it shall be retained. The note in that case, like the one now before the court, recited that it was given for the land. The learned chief justice, delivering the opinion, says this "could have been for no other purpose than to indicate the intention of the contracting party not to release the lien by the additional security." This intention in that case, however, was aided by parol testimony.

Whatever, in fact, may be the weight in evidence of this recital to show the true intention of the parties, it is believed that there was error in not submitting it to the consideration of the jury in accordance with the general rule, that the waiver of the vendor's lien is a question of fact to be determined from the testimony, and not a conclusive presumption of law.

There was also error in the charge, which may have misled the jury, in assuming that the first note was given to Vaughan, when the evidence did not warrant it.

As the case will have to be remanded, we deem it proper to express an opinion upon another point presented in the record, as to the effect upon the vendor's lien of having secured the first note by deed of trust on the land.

The plaintiff in his petition and prayer does not rely upon this deed of trust, but upon the vendor's lien. What its terms were, and why the same was not renewed or relied on, is not disclosed by the record.

There are several conflicting decisions, to be found in courts of high authority, both for and against the proposition that

the taking a mortgage or deed of trust on the land to secure the purchase-money will merge or defeat the vendor's lien.

This court has decided against the proposition being a conclusive presumption of law.

In the case of Wasson *v.* Davis, 34 Tex., 167, it is said: "The taking of a mortgage over the land to secure purchase-money does not divest the lien, but must be regarded as evidence of an intention to rely upon it and render it notorious by record. The question is not whether the vendor relies upon his lien, but whether he relies upon the particular estate sold for his security. If he intends to rely on the estate, the law gives him the equitable lien, and it would not be fair to divest the lien, if he shows only a purpose to strengthen it and not to abandon it. Courts look to the facts of the lien, not to the form; equity pursues the substance, not the shadow, and will not disregard the essence of things to insist on form."

In the recent case of Flanagan *v.* Cushman, 48 Tex., 241, and which is analogous on principle to this case, Flanagan having been substituted for the original vendor, the court say: "The note given Flanagan being for the debt which Cushman agreed to pay for the land, appellant, as his assignee, is in equity entitled to a lien for its payment, unless this lien was waived by accepting the mortgage on the land; but if the giving of the mortgage would warrant such an inference, this inference may be rebutted by proof that such was not the intention of the parties to the transaction."

This question, then, like the others, is one of fact, to be ascertained from the acts and intention of the parties.

The error assigned, that the jury did not render a verdict for gold coin, as expressly contracted for, is well taken. (Bridges *v.* Reynolds, 40 Tex., 214.) Also, that the judgment is not responsive to the verdict, in failing to include the interest. The rate of interest, and date from which the same should be calculated, and the amount of the principal having been found, this was sufficiently certain. (Burton *v.* Ander-

son, 1 Tex., 97.)    This might be reformed here, if the case should not have been remanded on other grounds.

In justice to the judge presiding, it may be stated, in regard to the last two errors above mentioned, that his attention was not called to the same, by special charge, by motion to reform, or in the motion for new trial.

Judgment reversed and cause remanded.

REVERSED AND REMANDED.