JOHN H. GLAZE v. N. WATSON.

(Case No. 2988.)

</div>

1. VENDOR'S LIEN.— A judgment against a vendee foreclosing a vendor's lien to satisfy purchase money notes cannot effect the rights of the holder of other notes given for a portion of the purchase money, and who is not made a party to the suit in which the lien is foreclosed.

2. VENDOR'S LIEN.— When a purchaser executes his note for purchase money to a creditor of the vendor, who had a prior deed of trust upon the property, such substitution, by consent of parties, does not defeat the vendor's lien; nor would a waiver of the lien result from the execution of a deed of trust to the substituted creditor to secute the note.

3. SAME — VENDOR'S LIEN.— The deed of trust to the substituted creditor, to secure payment of purchase money, must be satisfied ·before the property can be subjected to the payment of a debt not for pur-

chase money, secured by deed of trust on it, both deeds being executed on the same day. If the property be first sold to satisfy the deed of trust to secure the debt which was not for purchase money, and is afterwards sold under the trust deed to secure purchase money, the beneficiary under said deed not being a party to proceedings resulting in the prior sale, then the purchaser under the trust sale to satisfy purchase money notes takes the absolute superior title to the land.

4. PURCHASER AT TRUST SALE.— A purchaser under a trust sale is subrogated to the right of him who made the trust deed to redeem the land by paying off a prior lien secured by trust deed for unpaid purchase money; if he fails to do so, a subsequent sale to enforce the prior lien vests the absolute superior title in the purchaser.

APPEAL from Parker. Tried below before the Hon. Wm. S. Bledsoe, special judge.

On the 5th of February, 1872, J. W. H. Blackwell and his wife, Martha Blackwell, were the owners of the lots in controversy, occupying the same as a homestead. On that day they obtained a loan from Nathan Watson of $1,200, and executed their note to him therefor, due on the 5th of February, 1873, bearing interest at the rate of thirty per cent. per annum; to secure the payment of that note they executed, at the same time, a deed of trust, conveying the property to John W. Squyres as trustee, with the usual powers of sale, which was on the same day filed for record in the proper office, and was recorded March 19, 1872. The money thus obtained was expended by Blackwell and wife on the lots.

About the 15th December, 1873 (appellee's claim, then amounting to $1,867, being due), John F. Cock was then the owner of certain lots, and with his family was occupying the same as a homestead. Previous to that time Cock had (October 21, 1873) executed his note to appellant (John H. Glaze) for the sum of $3,000 gold, due and payable twelve months thereafter, and to secure the payment thereof had executed a deed of trust, conveying to Sam H. Milliken, as trustee, his homestead, store-house and lot also. Cock applied to Blackwell and wife to trade

for the property in controversy. Blackwell and wife, to enable them to make the trade, agreed with appellee that if he would accept the note and deed of trust of Cock and wife in the place and in lieu of their note and deed of trust, then his (Watson's) lien under the Cock note and deed of trust upon the property in suit should remain, as they understood it then was, the prior and first lien upon the property. Under this agreement appellee consented and took the note of Cock and wife, payable twelve months after date, and also their deed of trust upon the property to secure the same, and gave up the note and deed of trust of Blackwell and wife.

In this transaction appellee seems to have been led by the conversation of the parties to believe that it was an exchange of property between Blackwell and Cock, the difference to be paid by Cock being the amount then due from Blackwell and wife to appellee, and which was to be taken by Blackwell and wife, *pro tanto*, as consideration for the property. Appellee, it would seem, did not know that any other liens were to be created upon the property in the transaction between Blackwell and Cock. The real trade between Blackwell and Cock, however, was this: the consideration to be paid by Cock for the property was, first, appellee's debt of $1,867, gold coin; second, a note to Hood and McCall for $500; third, Cock's homestead at $3,500; fourth, the tract of land in Red River county at $3,500; fifth, four notes to Blackwell and wife from Cock and wife, amounting in the aggregate to $1,500. The deed from Blackwell and wife to Cock and wife for the property, and the note and deed of trust from Cock and wife to appellee, were simultaneously executed. On the 12th of January, 1874, Cock executed to Blackwell a negotiable note for $508, which purported to retain a lien upon the property in controversy, and which was then transferred to Hood and McCall, who had a prior trust deed which they released. On the 15th December, 1873, the

date of the execution of the other trust deed, Cock and wife executed simultaneously to appellant a deed of trust upon the property in suit to secure the $3,000 note given by them to appellant in October, 1873. This deed of trust was filed for record, and recorded one hour after Watson's deed of trust. By direction of appellant, the property was sold by virtue of his deed of trust on the first Tuesday in December, 1874, and he purchased the same. At the time it was offered for sale, before any bid had been made therefor, the appellant being present, appellee, by his attorney, gave public notice that he claimed the superior lien on, and right to, the property by reason of his note and deed of trust.

On the first Tuesday in February, 1875, appellee caused the property to be sold by virtue of his deed of trust, when he became the purchaser. The appellant, after all the notes above mentioned had become due, purchased them, prosecuted suits thereon to judgment, and caused orders of sale to issue; had the sale of the property made and became the purchaser thereof.

Glaze appeared and defended as landlord. Verdict and judgment for Watson.

*McCall & McCall, Hancock, West & North, Tignal W. Jones, A. J. Hood* and *White & Plowman,* for appellant.

*Watts & Lanham,* for appellee.

BONNER, ASSOCIATE JUSTICE.— We will not undertake to dispose of this case in the order presented by the assignment of errors. To arrive at its proper decision, it should be remembered that it is simply an ordinary action of trespass to try title, in which both parties specially deraign their respective titles from John F. Cock and wife as a common source; and that the only issue presented by the pleadings is one of superiority of title.

Watson, the plaintiff below, appellee here, claims under the following chain of title:

·*First.* Deed of trust made by Cock and wife to Squyres, trustee, of date December 15, 1873, with power of sale, to secure their note of that date, due twelve months thereafter, for $1,867, given to Watson.

*Second.* Sale under said deed of trust, and deed from the trustee to Watson as purchaser, of date February 2, 1875.

The testimony shows that the consideration of this note and deed of trust was part of the purchase money for the property in dispute, bought by Cock from his vendor, Blackwell. That at the date of Cock's purchase, Blackwell owed Watson this amount, and to secure which Watson held a prior deed of trust on the same property, made by Blackwell and wife. That as part of the agreement of sale between Blackwell and Cock, the latter assumed the payment of this debt, and to secure it, as it then was; and in pursuance of this agreement, he and wife executed their note and deed of trust to Watson in lieu of the one previously held by him. The title of Glaze, defendant below, appellant in this court, is two-fold:

*First.* Deed of trust made by Cock and wife, to Milliken, trustee, also of date December 15, 1873, with power of sale, to secure their prior note of date October 21, 1873, due at twelve months, for $3,000, given to Glaze.

*Second.* Sale under said deed of trust and deed from Lindsey, substituted trustee, to Glaze as purchaser, of date September 9, 1874, prior to the deed to Watson.

*Third.* Deed from Lindsey, as sheriff, to Glaze, of date September 18, 1875, subsequent to Watson's deed, made by virtue of sundry orders of sale from the district court, on judgments against Cock and wife enforcing the vendor's lien on the property, upon certain other notes given by Cock and wife to Blackwell for the remainder due on the purchase money.

Watson was not a party to the judgments enforcing the vendor's lien on these notes.

We will first dispose of the latter branch of Glaze's title, derived through the sale under these judgments.

In regard to this, it is sufficient to say that, under repeated decisions of this court, these judgments could not affect Watson, as he was not made a party to the suits in which they were rendered. Mills *v.* Taylor, 30 Tex., 7; Delespine *v.* Campbell, 45 Tex., 628, and authorities cited.

The controversy is therefore narrowed down to the simple question of the superiority of the respective titles of the parties derived through their two trust deeds.

The fact that Watson was substituted for Blackwell as payee of part of the purchase money to be paid by Cock, would not defeat the vendor's lien. Pinchain *v.* Collard, 13 Tex., 333; Ellis *v.* Singletary, 45 Tex., 36; Irvin *v.* Garner, 50 Tex., 48.

Neither would the fact that a deed of trust was given to Watson be a waiver of the lien. Wasson *v.* Davis, 34 Tex., 167; Irvin *v.* Garner, 50 Tex., 48.

Under the circumstances of this case, the law would not presume that Watson intended to waive his lien, unless the testimony clearly showed such intention. Silliman *v.* Gammage (decided at the present term).

Both deeds of trust were executed on the same day, and under such circumstances of actual notice, as, between the parties, would render of no avail the fact that the one in favor of Watson was filed for record and recorded an hour before that to Glaze; and, *prima facie,* it would seem that they stand on an equal footing. But, as before shown, the note secured by the deed of trust to Watson was part of the purchase money for the property. The note, however, given to Glaze, and secured by his deed of trust, was not part of the purchase money. It is true that this note was an incumbrance, through a

deed of trust on the property sold by Cock to Blackwell, and which property entered into the consideration of ·the sale from Blackwell to Cock; but in a legal sense it was no more a part of the purchase money due to Blackwell than would have been a note for borrowed money, to pay off this incumbrance, given by Cock to some other party. Blackwell was in no wise liable for this note due by Cock to Glaze, and did not assume any responsibility for its payment. On the contrary, it was a debt due by Cock and wife alone, the payment of which would not lessen their liability to Blackwell. Although to secure it, Cock gave a deed of trust on the property after the purchase of it from Blackwell, yet it was not because this property was liable otherwise for its payment, and Cock could have demanded the privilege of giving the lien upon any other property as well. But the amount for which the note and deed of trust were given to Watson was not only due him by Blackwell, but was a prior charge upon this very property, and its payment, to that extent, would discharge part of the purchase money due by Cock. Glaze himself in his testimony admits a knowledge of these facts before the trade was made.

Under these circumstances, as Watson's note was for part of the purchase money and Glaze's note was not, this, of itself, as Watson did not waive his lien, but expressly retained it, would make his the superior.

But again, the execution of the note and deed of trust in favor of Watson was an essential condition and part of the promised consideration from Cock to Blackwell, and without complying with which, Cock could not have obtained his deed to the property. He necessarily must have first obtained this title before he could incumber it with the deed of trust to secure the collateral debt due by him to Glaze, and with the payment of which neither Blackwell nor Watson were charged, and which incumbrance could take effect only on such title as Cock ob-

tained. The agreement between Cock and Glaze may have been cotemporaneously with or even prior to the sale to Cock, but it could take effect only after Cock had acquired the title, and then only on such title as he could incumber, having regard to the claim of Watson, to secure which constituted an essential prerequisite to the purchase.

We are of opinion that the lien of Watson was superior to that of Glaze, and that the jury in thus finding in effect did not err.

It does not become necessary to decide whether there was error in permitting parol evidence to be introduced to show that, by the agreement between Watson and Blackwell (to which neither Glaze nor Cock were shown to have been parties), the lien of Watson was to have been a prior or preferred one; as the court more than once, in the charge, instructed the jury that this evidence could not affect the rights of Glaze. This restriction in the charge cured the error, if any, both in overruling the objections to this testimony, and the demurrer to that part of the pleadings in which a predicate was laid for its introduction.

Watson's lien, then, being superior to that of Glaze, it remains but to inquire into the legal effect of the sales under the two deeds of trust. The sale under which Glaze claims title was first made. This had the effect, as against Cock, to bar his equity of redemption and extinguish his debt to Glaze to the amount of his bid. Glaze then took the title subject to the prior lien of Watson, and was subrogated to Cock's right to redeem as against Watson. Glaze failed to redeem, and the subsequent sale and purchase by Watson under his trust deed vested in him the absolute superior title to the land, and the surplus of his bid, if any, belonged to Glaze. 2 Perry on Trusts (2d ed.), § 602$bb$; Robertson $v.$ Guerin, 50 Tex., 323; Graham $v.$ King, 15 Ala., 563.

We pass only on the case as made by the issues and relief sought in the pleadings, and do not decide what might have been the respective equities of the parties, if, as in Pitman v. Henry, 50 Tex., 359, the pleadings had been framed with respect to having one or both the sales set aside, these equities settled, and a new sale ordered. Ellis v. Singletary, 45 Tex., 27.

<div align="right">JUDGMENT AFFIRMED.</div>

[Opinion delivered November 5, 1881.]