JOHN J. SPINDLER et al., Appellees, v. IOWA & O. S. L. R. Co. et al., Appellants.

VENDOR AND PURCHASER: Remedies of Vendor—Payments in
1  Property Other Than Money—Default—Conversion Into Money Demand—Demand. A contract of sale, providing that vendee shall make payment in certain corporate stock on or before a specified date, may be converted into a money demand, *ipso facto*, by the failure of the vendee to make proper tender of the stock under the contract. Demand by vendor for performance is not necessary under such a contract, before bringing suit.

PRINCIPLE APPLIED: See No. 2.

VENDOR AND PURCHASER: Vendor's Lien—Waiver by Conduct
2  Inconsistent With Existence of Lien. A vendor's lien is never allowed to take priority over equities which have attached in ignorance of such lien, and the court is prone to find a waiver from

any conduct inconsistent with the right to insist upon such lien. (Sec. 2924, Code, 1897.)

PRINCIPLE APPLIED: One Saar was a promoter and at all times a stockholder and director in a railway company. In 1909, by an unrecorded contract, he agreed to deed a right of way to the company, at any time within a year after the location of the line, upon receipt of stock in the company to the amount of $200 per acre, stock to be delivered by August 5, 1909. The road was built. Saar made no lawful demand for his stock. The company did not refuse to deliver it. Its issuance was simply neglected. In the same year, 1909, during construction of the road, the company issued a trust deed to secure bonds of the company. In November, 1911, when a prospective sale or financing of the road was pending, and, in order to show good title in the company, Saar, without demand for his stock, deeded the right of way land to the company. This prospective sale failed. More than a year after an action had been brought to foreclose the trust deed, Saar intervened, claiming a vendor's lien prior to the trust deed. This was the first time the trustee knew Saar was claiming such a lien. *Held*, (a) assuming non-waiver of lien, the trust deed took priority over Saar's unrecorded contract of sale, but (b) Saar had, by his conduct, waived his lien.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

SATURDAY, DECEMBER 18, 1915.

In an action to foreclose a trust deed on the property of the defendant railway company, H. F. Saar intervened, claiming to hold a vendor's lien upon a strip of ground across his land, which he had deeded to the railway for its right of way. His right to such a lien was denied by plaintiff trustees, and they further pleaded a waiver of the lien and estoppel to assert the same, and further pleaded that intervener had no cause of action, for the reason that he had made no demand upon the company for the issuance of stock. Upon these issues, the case was tried, resulting in a judgment for intervener in the sum of $1,820, and establishing it as a general claim against the property of the railway company, but denying his right to a vendor's lien. The intervener appeals.—*Affirmed.*

*Tinley, Mitchell & Pryor; Sutton, McKenzie & Cox; S. A. Harris*, for appellants.

*W. H. Kilpack* and *John J. Hess*, for appellees.

DEEMER, C. J.—In the year 1909, the defendant railway company executed a trust deed to the plaintiffs as trustees, covering all its property and all that it might thereafter acquire, to secure the sum of $150,000 in bonds issued by said company. These bonds were all sold, intervener himself having purchased some of them. These bonds, or some of them, having matured, plaintiffs commenced their action to foreclose the trust deed, making the company and certain lien holders parties defendant. H. F. Saar intervened in the suit, claiming that he held a vendor's lien upon certain of the right of way of the company deeded by him to the said company, for which he received no consideration. Plaintiffs denied intervener's right to a lien and pleaded many defenses thereto, which will be noticed as we proceed.

The trial court established intervener's claim against the company, but denied his claim to a vendor's lien, and the appeal is from this ruling. The defendant railway company was organized some time prior to the year 1909, and intervener was at all times a stockholder and director of the company. In the year 1909, he entered into a contract with the railway company to sell it the right of way in question across his land in Pottawattamie County, for the express purpose of aiding in the construction of the line, and in consideration of the sum of $1.00 to him in hand paid. By the terms of the agreement, the company was to pay $200 an acre for each and every acre taken, and was authorized to immediately enter upon the land. The contract also provided:

"And I further covenant and agree, for myself, my heirs, executors, administrators and assigns, that, upon the demand of said Iowa & Omaha Short Line Company, or assigns, at any time within one year after the line of said railway has been definitely located across said land, and the payment or

tender of the sum of two hundred dollars an acre in stock of Ry. Co., I will convey to the said railroad company, or assigns, by warranty deed, free and clear of all incumbrances and liens, the said strip of land; and will, in and by said deed or by some other good and sufficient instrument, release and discharge said Iowa & Omaha Short Line Railway Company, or assigns, from all claims for all damages to my land by reason of the proper and lawful construction, operation and maintenance of said railroad. . . .

"And it is further agreed that the said H. F. Saar agrees to accept capital stock to the amount of two hundred dollars per acre in full payment of the right of way from the Iowa & Omaha Short Line Ry. Co., said stock to be issued by Aug. 5, 1909. Said Ry. Co. agrees to establish loading station near my residence and provide stock runway if requested."

Pursuant to this contract, the railroad company entered upon intervener's land and took something like nine acres thereof. This was done in the summer or fall of the year 1909. No stock was issued to intervener at the time fixed in the contract, August 5, 1909, or at any other time, and there is no testimony that intervener ever made any formal demand for his stock. It was talked about at times when he was present at directors' meetings, but no formal demand was ever made for the stock. He made no deed of the right of way until November of the year 1911, when negotiations were entered upon by the railway company with some eastern capitalists for the sale of or the financing of the railway, and it became necessary to show title in the railway company. Then intervener, on November 17, 1911, executed a warranty deed to the railway company of the right of way across his land and delivered the same to the railway company, without insisting upon the issue of stock therefor, either then or thereafter. This deed was placed of record, and intervener made no claim against the railway company or anyone else, until the 15th day of August, 1914, when he filed his petition of intervention in this case. As already indicated, there was

some talk, at directors' meetings or with some of the officers, about the issuance of stock, but no formal demand was ever made. The company did not refuse to issue the stock, but seemed willing to do so at any time; and intervener did not press his right thereto. It seems to have been a clear case of neglect, due, perhaps, to the fact that intervener was a stockholder and director of the company, a holder of $10,000 of the bonds issued by the railway company, and interested in getting the eastern capitalists to take hold of and finance the road. The negotiations with these capitalists failed, and this suit to foreclose the trust deed was begun in August of the year 1913. There is no testimony that any of the bond-holders invested their money on the strength of the railway company's having full title to all its right of way; but the trust deed, by its express terms, covered all after-acquired property, and the trust deed fastened itself upon the property as soon as acquired, doubtless, subject to any prior liens thereon. Appellees contend that intervener is not entitled to the relief demanded or to any relief whatever, because: (1) He made no such demand for his stock as would convert the obligation to issue it into a money demand; (2) intervener waived his vendor's lien, if any he had, because of his conduct with reference to the property; (3) he is estopped by conduct from claiming a lien; and (4), in any event, the trust deed has priority over intervener's claim.

I. As the time for the delivery of the stock was fixed in the contract, no demand was necessary before bringing suit. Code, Sec. 3056. *Games v. Manning*, 2 G. Gr., 251; *Wiley v. Shoemak*, 2 G. Gr., 205. But fail-

1. VENDOR AND PURCHASER: remedies of vendor: payments in property other than money: default: conversion into money demand: demand.

ure to make demand or to insist upon delivery of the stock, either at the time called for by the contract or at the time when the deed was executed, has a very material bearing upon the issues of waiver and estoppel. Intervener was doubtless entitled to have his claim established as a money demand.

II.  As to the vendor's lien, Code Sec. 2924 reads as follows:

"No vendor's lien for unpaid purchase money shall be enforced in any court of this state after a conveyance by the vendee, unless such lien is reserved by conveyance, mortgage or other instrument duly acknowledged and recorded, or unless such conveyance by the vendee is made after suit by the vendor, his executor or assigns, to enforce such lien.  But nothing herein shall be construed to deprive a vendor of any remedy now existing against conveyance procured through the fraud or collusion of the vendees therein, or persons purchasing of such vendees with notice of such fraud or lien."

2. VENDOR AND PURCHASER: vendor's lien: waiver by conduct inconsistent with existence of lien.

There is no claim that the trustees in this case took their deed with knowledge of intervener's claims or equities; and the agreement to sell the right of way was neither acknowledged nor recorded.  The railway company had taken possession of the right of way and had commenced grading at the time the trust deed was executed.  At no time did the intervener object to the grading or the laying of the rails upon his land, and at no time did he claim to be entitled to a vendor's lien, until about one year after this suit was brought.  He received stock from the company, from time to time, for cash advanced, but never pressed his claim for stock under his contract of sale, and he made a full warranty deed for the land to the railway company in the year 1911, without demanding his stock or claiming any lien or right to compensation for more than three years thereafter.  As the contract of sale was not recorded, the trust deed takes priority over the lien, even if it were not waived; although the lien might be enforced against the equity of redemption, if there was any.  *Tinsley v. Tinsley*, 52 Iowa, 14; *Davis v. Lutkiewiez*, 72 Iowa, 254.  Even a judgment against a vendee will take priority over a vendor's lien which is unrecorded as provided by the statute.  *Cutler v. Ammon*, 65 Iowa, 281; *Henry*

*County v. Bradshaw,* 20 Iowa, 355.   The well established rule
of the cases is that a vendor's lien is not based upon contract,
nor is it an equitable mortgage or trust.   It is a mere equity,
created by courts of chancery, to be enforced between the par-
ties where no counter equities arise, and is never allowed to
overrule or take priority over equities or rights of third per-
sons which have attached in ignorance of the vendor's equity.
*Allen v. Loring,* 34 Iowa, 499; *Porter v. City of Dubuque,*
20 Iowa, 440.

It is for this reason that courts are prone to find a waiver
from any conduct inconsistent with the vendor's right to
insist upon a lien.   In *Fisher v. Shropshire,* 147 U. S., 133, the
Supreme Court of the United States held that, after the exe-
cution of a conveyance by the vendee, the lien ceases to exist,
even though the grantee knew that the consideration had not
been paid, on the theory that the vendor had waived his
lien.   Another court held that this was true although the
conveyance by the vendee was by quitclaim deed.   *Chris-
man v. Hay,* 43 Fed., 552.   Waiver may be found from any
conduct on the part of the vendor which shows that he did
not rely upon the lien or has abandoned it; and this may
result from a failure to assert the same within a reasonable
time.   *Doolittle v. Jenkins,* 55 Ill. 400; *Moshier v. Meek,* 80
Ill., 79.

In *Prouty v. Clark,* 73 Iowa, 55, this court held that a
vendor's lien ceases to have any validity after a conveyance,
and that an assignment for the benefit of creditors takes pri-
ority over an unrecorded vendor's lien.   Waiver is said to
be the intentional relinquishment or abandonment of a known
right, and whether or not there has been a waiver in any
given case is a question of fact.   *Irvin v. Garner,* 50 Tex.,
48.   In the instant case, the intervener might have had stock
for his right of way at the time called for by the contract
or at any time thereafter; this was never denied him, and,
according to the record, the issuance thereof was simply de-
ferred.   Had he taken the stock, he would have had no lien,

no matter how worthless the stock might prove to be. He made and delivered his warranty deed without any demand for his stock and for the express purpose of clearing the title to the railway property, and manifestly intended, at that time, to abandon whatever claim he might have against the property, evidencing his right to rely upon the stock which was promised for the right of way. He never received this stock, although the company was ready to deliver it to him and never refused to do so. He rested content with the situation until nearly a year after the foreclosure suit was started, and did not then demand his stock, but sought to convert it into a money demand and to establish a vendor's lien against the trustees. We have seen that, under our holdings, the most he is entitled to is a vendor's lien upon the equity of redemption, if there is any; and we think the testimony clearly shows a waiver and abandonment of the lien. *In re V. & M. Lumber Co.*, 182 Fed., 231, is a case very closely in point, and it was there held that the vendor's lien was waived. See also *Franklin v. Loan & Investment Co.*, (Ill.) 45 N. E., 212. The decree seems to be correct, and it is—*Affirmed.*

LADD, WEAVER and EVANS, JJ., concur.